Billy **COWART** and Julie Elaine Cowart, **Individually and as Representatives of the Estate of Richard Glenn Cowart, Deceased, Appellants,**

v.

**KMART CORPORATION, Appellee.**

No. 05–97–01635–CV.

Court of Appeals of Texas, Dallas.

May 8, 2000.

---

Ronald W. Uselton, Sherman, for Appellants.

Willie Ben Daw, Daw & Ray, P.C., Sherry Bankhead Bellinger, Houston, for Appellee.

Before Justices MOSELEY, O'NEILL, and ROSENBERG.[1]

## OPINION

Opinion By Justice ROSENBERG (Assigned).

Billy Cowart and Julie Elaine Cowart, individually and as representatives of the Estate of Richard Glenn Cowart, Deceased (collectively, the Cowarts), sued Kmart Corporation (Kmart) for negligently selling ammunition to Manuel Carrasco and James Gabriel that another person, Leonard Bell, used to shoot and kill Richard Cowart. To defeat the Cowarts' negligence action, Kmart filed a motion for summary judgment, alleging that the shooting incident was not foreseeable. The trial court granted Kmart's motion. In one point of error, the Cowarts appeal the summary judgment. We affirm.

## BACKGROUND

On April 4, 1992, Manuel Carrasco and James Gabriel went to Kmart to buy bullets. They bought a box of CCI .22 long rifle mini-mag bullets. Carrasco was seventeen years old at the time of the sale.[2] There is no evidence of Gabriel's age in the record. Carrasco and Gabriel had taken a .22 caliber pistol from Carrasco's younger brother, who had taken it from a friend's home. With the ammunition they purchased at Kmart, Gabriel and Carrasco spent the afternoon target shooting with the pistol. Later, Gabriel and Carrasco took the unloaded pistol with them in a car as they picked up friends, including Leonard Bell. After Bell discovered the gun in the car, he aimed and dry-fired it at persons several times. During the evening, Gabriel, Carrasco, and Bell went to a Jack–in–the–Box restaurant, purchased beer and went to the country to consume it, and returned to the Jack–in–the–Box. Finally, the three decided to go to Denison to "cruise" and look for a fight. There Gabriel, Carrasco, and Bell encountered Richard Cowart and began "horsing around." Gabriel and Carrasco went back to the car, where Carrasco loaded the gun and handed it to Gabriel. Gabriel placed the gun in his waistband, concealed by his jacket. Gabriel then walked up to Bell, who had Richard in a head lock. Bell then took the pistol from Gabriel, apparently not knowing it was loaded, aimed and fired it, shooting and killing Richard.

■ Criminal charges were brought against Bell and Carrasco, resulting in convictions for involuntary manslaughter. The Cowarts then filed a civil lawsuit against Carrasco, Gabriel, and Kmart. The Cowarts' claim against Kmart was for the negligent sale of the ammunition to minors. In its second amended motion for summary judgment, Kmart asserted that Bell's criminal conduct was an intervening and superseding cause of Richard's death, and, "as such, [the alleged negligence of] Kmart was not the proximate cause of the injury to decedent." The trial court granted Kmart's motion.[3] In a single point of error, the Cowarts complain the trial court erroneously granted the summary judgment in favor of Kmart.[4]

1. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. The Cowarts assert that both Carrasco and Gabriel were minors at the time of the sale. The affidavit of Ron Uselton, the Cowarts' attorney, states that Carrasco told him that he was seventeen years old at the time of the sale. In addition, testimony from the criminal trial indicates Carrasco was sixteen or seventeen years old at the time of the sale.

3. After the trial court granted Kmart's motion for summary judgment, the trial court severed the Cowarts' cause of action against Kmart, making the summary judgment final. Carrasco and Gabriel are not parties to this appeal.

4. In granting Kmart's second motion for summary judgment, the trial court found "the superseding and intervening actions of third-parties prevent, as a matter of law, any finding of duty or proximate cause on behalf of Kmart Corporation." Kmart's second amended motion for summary judgment only addressed the proximate cause element of the Cowarts' negligence claim. The Cowarts do not address the duty issue in the brief, while

## STANDARD OF REVIEW

The standards for reviewing summary judgments are well established. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon*, 690 S.W.2d at 548; *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).[5] A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 657 (Tex.App.-Dallas 1992, no writ).

## PROXIMATE CAUSE

In this negligence case, Kmart sought to prevail on its motion for summary judgment by negating the foreseeability element of proximate cause through proof of third-party criminal conduct. The Cowarts argue that Kmart did not prove that it could not foresee the resulting damages from the sale of the ammunition to a minor. The Cowarts assert that whether any intervening cause relieves Kmart of liability is a fact issue for the jury.

■ Proximate cause has two elements, cause in fact and foreseeability. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992) (op. on reh'g). Foreseeability means the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act created for others. *See id.* As a general rule, criminal conduct of a third party is a superseding cause that extinguishes the lia-

bility of the previous actor. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987). However, when the third party's criminal conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous tortfeasor's liability. *See Nixon*, 690 S.W.2d at 550. In *Nixon*, the supreme court relied on section 448 of the Restatement (Second) of Torts to articulate this proposition. *See id.* Section 448 provides:

> The act of a third person committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

RESTATEMENT (SECOND) OF TORTS § 448 (1965).

■ In the summary judgment context, a defendant seeking to negate foreseeability must prove more than that the intervening third-party criminal conduct occurred. *See Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex.1999). The defendant has the burden to prove that the conduct was not foreseeable. *See id.* The defendant negates the ordinary foreseeability element of proximate cause when the defendant presents evidence that the plaintiff's injuries resulted from intervening criminal conduct that rises to the level of a superseding cause based on factors like those in section 442 of the Restatement (Second) of Torts. *See id.* The burden then shifts to the plaintiff to raise a fact issue by presenting controverting

---

Kmart does. Because summary judgment can be granted only on grounds alleged in the motion, we address only the issue of proximate cause in this opinion. *See Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983) (per curiam).

5. Kmart's second amended motion for summary judgment was filed in 1995, before rule of civil procedure 166a was amended to permit a no-evidence motion for summary judgment. *See* Tex.R. Civ. P. 166a(i) (effective Sept. 1, 1997).

evidence that the criminal conduct was foreseeable. *See id.*

### Analysis

■ The Restatement factors to be considered in determining whether an intervening force rises to the level of a superseding cause are:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person that is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

RESTATEMENT (SECOND) OF TORTS § 442 (1965); *see Humble Oil & Ref. Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968) (adopting section 442 factors).

■ Considering the first factor, Bell's intervening act did not bring about the kind of harm that would have otherwise resulted from Kmart's negligent sale of ammunition to a minor.[6] Unlike alcohol, the sale of ammunition does not involve a product that impairs the user.

While statutes regulating alcohol sales to minors intend to prevent negligence that foreseeably occurs as a result of the minor's impaired judgment resulting from drinking the intoxicating substance, statutes regulating the sale of ammunition to minors intend to prevent injuries from the misuse of a dangerous instrumentality by those too young to appreciate the danger. *Compare Phan Son Van,* 990 S.W.2d at 753, 755 (noting illegal sale of alcohol to minors "will result in the minor driving while intoxicated and either causing injury or being injured") *with Hulsebosch v. Ramsey,* 435 S.W.2d 161, 163–64 (Tex.Civ. App.-Houston [14ᵗʰ Dist.] 1968, no writ) (noting seller has common-law duty not to sell an article capable of injuring a third party if the minor did not know, or could not reasonably be assumed to know, of the dangerous character of the article) *and Robinson v. Howard Bros. of Jackson, Inc.,* 372 So.2d 1074, 1075 (Miss.1979) (noting if sale of guns and ammunition to minor was a contributing cause of premeditated murder and of liability as a matter of law, then "one who sells a pistol to a minor in violation of the [applicable] statutes would be absolutely liable for any damages inflicted by a minor with a pistol"). Certainly, the likelihood that the ammunition will be used is foreseeable at the time it is sold. However, at most, the kind of danger Kmart could foresee from the sale was misuse or mishandling resulting from the buyer being too young to appreciate the danger of the ammunition. A minor's ability to appreciate the danger of ammunition depends on the age of the minor. *See Schmit v. Guidry,* 204 So.2d 646, 648 (La.Ct.App.1967). Here, Carrasco was seventeen years old, old enough to appreciate the danger of negligent or intentional misuse of ammunition. *See id.* (concluding fourteen-year-old was not too young to know character of shotgun shells or to take proper care of shells). Further,

---

**6.** The Cowarts alleged that Kmart was negligent because it sold ammunition to Gabriel and Carrasco who were "underage." In its motion for summary judgment, Kmart did not dispute the Cowarts' facts.

Kmart could reasonably assume that a minor, Carrasco, would obey the laws. *See Robinson*, 372 So.2d at 1076. Thus, Kmart could not foresee that this sale to a seventeen-year-old minor would result in negligent or intentional misuse of the ammunition by Bell, who was not a party to the sale.

■ Regarding the second factor, Richard's death was an extraordinary consequence in view of the circumstances existing at the time Kmart sold the ammunition. Kmart sold the bullets to Gabriel and Carrasco, not to the shooter, Bell. Gabriel and Carrasco initially used the ammunition for target practice, a consequence of the sale that Kmart could have foreseen. After the sale and target practice, Gabriel and Carrasco picked up Bell, and the threesome drank beer, "cruised" Denison looking for a fight, and began "horsing around" with Richard. Carrasco, without Bell's knowledge, loaded the gun, and gave it to Gabriel, who placed it in his waistband where it was concealed it by his jacket. Bell, who had dry-fired the pistol at persons earlier, took the loaded gun away from Gabriel and shot the victim. Thus, under these facts, the acts directly leading to Richard's shooting constituted an extraordinary, not a normal, sequence of events that was initiated after Kmart's sale of the ammunition to Gabriel and Carrasco. *See Scoggins v. Wal–Mart Stores, Inc.*, 560 N.W.2d 564, 567, 570 (Iowa 1997) (when twenty-year-old minor purchased ammunition in violation of federal law and committed suicide after fight with girlfriend, court held suicide not foreseeable by Wal–Mart because salesclerk had no reason to believe minor was suicidal or intended to use ammunition to injure himself); *Robinson*, 372 So.2d at 1076 (premeditated murder by minor purchaser of guns and ammunition not foreseeable because malicious and intentional act is less foreseeable than negligence when store clerk knew purchaser in school and no evidence purchaser had criminal record or

"exhibited the propensity to handle firearms in a dangerous manner").

Considering the third factor, the intervening force, Bell, operated independently of Kmart. Kmart did not sell bullets to Bell. The pistol was loaded without Bell's knowledge. Bell took the gun, not knowing it was loaded, and shot. It was this series of circumstances, operating independently of and beyond the control of Kmart after the sale of the ammunition, that put a loaded gun in Bell's hands. The facts show that Carrasco loaded the pistol and gave it to Gabriel, and Bell took the gun from Gabriel and shot and killed Richard. Thus, Bell's act was independent of Kmart's sale of the ammunition. *See Ward v. University of the South*, 209 Tenn. 412, 354 S.W.2d 246, 250–51 (1962) (noting even though guns and ammunition are dangerous, sale creates only a condition from which no harm is reasonably foreseeable or could have resulted if not for subsequent unrelated, intervening act).

The fourth factor also favors Kmart: The operation of the intervening force was due to the act of a third person, Bell. Regarding the fifth and sixth factors, Bell's act was wrongful or criminal. He created the dangerous situation by grabbing Richard, taking the gun and pointing it at Richard, and then firing. Concerning Bell's degree of culpability, there was evidence that he was convicted of involuntary manslaughter.

■ Application of these factors to the facts of this case provides an evidentiary basis for Bell's criminal conduct being a superseding cause of Richard's injuries. With this evidence of a superseding cause before the court, the burden shifted to the Cowarts to present evidence sufficient to raise a fact issue that the use of the ammunition by Bell was foreseeable by Kmart. Without summary judgment evidence that Kmart or its employees had knowledge or reason to suspect, by the demeanor or behavior of Carrasco or Gabriel, that either they or Bell would use the bullets for an illegal purpose, Kmart properly estab-

lished it could not have proximately caused Richard's death.

## CONCLUSION

Whether criminal activity is foreseeable in a particular instance requires "more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). The Cowarts provided no summary judgment evidence of any fact that should have alerted any Kmart employee that Gabriel or Carrasco would put the bullets in the hand of someone who would engage in criminal conduct. Thus, there was no controverting evidence Kmart could foresee that Carrasco, Gabriel, or Bell would use the purchased ammunition for a criminal purpose. Without this controverting evidence, there was no fact issue on foreseeability for the trial court. Therefore, because Kmart negated the foreseeability element of the Cowarts' claim, the trial court properly rendered summary judgment. *See Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 787–88 (Tex.App.-Houston [14th Dist.] 1990, writ denied); *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 847 (Tex.App.-San Antonio 1989, writ denied); *Diggles v. Horwitz*, 765 S.W.2d 839, 841 (Tex.App.-Beaumont 1989, writ denied); *January v. Peace*, 738 S.W.2d 355, 358–59 (Tex.App.-Tyler 1987, writ denied).

We overrule the Cowarts' point of error and affirm the trial court's judgment.