**Alberto PEREZ, Sr., Individually and as Personal Representative of the Estate of Alberto Perez, Jr., Deceased, Appellant/Cross–Appellee,**

**v.**

**Albert LOPEZ and Rachel Lopez, Appellees/Cross–Appellants.**

No. 08–00–00242–CV.

Court of Appeals of Texas, El Paso.

March 7, 2002.

Linda Turley, Dallas, for appellants.

H. Keith Myers, Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, for appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

### *OPINION*

RICHARD BARAJAS, Chief Justice.

This is a double appeal from a wrongful death and survival action arising from the death of Appellant's minor son, Alberto Perez, Jr. At trial, Appellant alleged that Appellees, owners of ABC Lock and Key Company, were negligent in picking the locked trigger lock on a bolt action 30.06 rifle, at the minor's request, without parental permission, consent or knowledge, and then returning the operational rifle to the minor who used it to commit suicide. For the reasons stated, we reverse the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Alberto Perez, Jr. ("Albert"), a minor, contacted Appellees/Cross–Appellants, Albert Lopez and Rachel Lopez, owners of ABC Lock and Key Company in El Paso, Texas, and asked if they could make a new key for the trigger lock on a rifle because he did not have a key to the lock. Rachel told him that she could *not* make a new key, but that she could pick the lock for him if he brought the unloaded rifle to her shop and had proper identification. Albert took the unloaded rifle and his driver's license to Appellees' store. Rachel and Albert were "joking around" about what he intended to do with the gun. She asked, "You're not going to go out there and rob anybody?" Albert responded, "No, I just want to go hunting." Rachel stated that Albert started laughing after the exchange.

Albert Lopez, co-owner of ABC Lock and Key, knew that Albert was not eighteen, so he called his home to verify that he was in proper possession of the weapon. No one answered, no answering machine picked up the call, and he was never able to verify whether Albert was in proper possession of the rifle. Nevertheless, Rachel picked the lock after her husband instructed her to do so and returned the rifle to the minor after the $4 fee was paid.

The record shows that Appellant discovered the rifle (which belonged to his older son) in his house about a week before the suicide. Nonetheless, Appellant did not remove the newly discovered rifle or otherwise secure it from access by his minor son, Albert, Jr. On the day of the suicide, he took the rifle to work with him because several co-workers were interested in purchasing it. He discovered that the trigger lock had been removed. Appellant took the rifle home after his supervisor told him that he could not leave it at work. He returned it under the bed where he had

found it, although he knew his minor son would be visiting his house that same day. Later that day, the minor took the rifle and committed suicide.

Appellant brought a negligence action against Appellees and sought damages for mental anguish and loss of companionship. The jury returned a verdict finding that *both* Appellees and Appellant were negligent and that their negligence was a proximate cause of Albert's death. The jury allocated percentages of responsibility as follows: Albert Lopez, thirty-four percent (34%), Rachel Lopez, thirty-three percent (33%), and Alberto, Sr., thirty-three percent (33%). The jury found no damages for Alberto, Sr.'s past or future loss of companionship and no damages for his past or future mental anguish. The jury failed to find Appellees grossly negligent as well. The jury awarded the estate of Alberto, Jr., $5,000 for funeral and burial expenses. Appellees filed a Motion to Disregard the Jury Answers and Enter Judgment Notwithstanding the Verdict, which was overruled by order of the trial court. Appellant filed his Motion for New Trial, which was overruled by operation of law. Both parties bring issues on appeal.

## II. DISCUSSION

Appellant brings four issues and Appellees bring one cross-issue. We address them in turn below.

### A. Factual Insufficiency

An "insufficient evidence" or factual insufficiency issue involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. The test for factual insufficiency issues is set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). In reviewing an issue asserting that a finding is against the great weight and preponderance of the

evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *See Carrasco v. Goatcher*, 623 S.W.2d 769, 772 (Tex.App.-El Paso 1981, no writ). The jury's finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *See id.* Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the issue should be sustained.

In Issues No. One and Two Appellant Alberto Perez Sr. complains that the jury's verdict of no damages for mental anguish in the past and future and no damages for loss of companionship and society was contrary to the overwhelming weight of the evidence or contrary to the uncontroverted evidence. Appellees argue that Appellant seeks to revive the "zero damages rule," which requires the jury to award something for every element of damages proven.[1]

Appellant testified that after his son's death, he had trouble sleeping through the night. He admitted that he had some psychological problems prior to his son's death and had been seeing Dr. Ambrose Aboud. Dr. Aboud testified that Appellant complained that he was depressed after Albert's death. He stated that Appellant related symptoms such as sadness, crying, loss of appetite, difficulty sleeping, and early morning awakening. Dr. Aboud determined that Appellant was depressed and prescribed medication. The medication did not "cure" Appellant's depression and Dr. Aboud offered to refer him to a psychiatrist. Appellant indicated to Dr. Aboud that it would be a shame to go to a psychiatrist; that it was a sign of weakness or failure. Dr. Aboud stated that Appellant remained depressed until his last office visit with him in July, 1998.

Irene Perez, Appellant's daughter, testified that her father was distant and forgetful since her brother's death. She stated that he was very active prior to the death. Ms. Perez stated that he used to do yard work and work on cars but that he had "let most of that go." She stated that he looks very tired now, has aged a lot, and does not eat as much as he used to. Ms. Perez also testified that Appellant had an extremely hard time sleeping.

---

1. In *Lowery v. Berry*, 153 Tex. 411, 269 S.W.2d 795 (1954), the Court upheld a decision of the Court of Civil Appeals reversing a judgment that a minor take nothing based on a jury finding of no damages because the undisputed facts disclosed that the minor had suffered damages and accordingly the answer of the jury should be disregarded. The "zero damages rule" is not a rule of damages. Rather, it is a common name for a challenge to negative jury findings as to damages based on the great weight and preponderance of the evidence, which requires the appellate court to follow standard rules in considering the challenge.

In reversing a judgment based on jury findings of zero damages for past physical pain and mental anguish, the Dallas Court of Appeals stated the appropriate standard of review in *Monroe v. Grider*, 884 S.W.2d 811, 820 (Tex.App.-Dallas 1994, writ denied). In our analysis, we are to consider all of the evidence, both favorable and contrary to the findings, and reverse and remand for a new trial only if the verdict is so against the great weight and preponderance of the evidence that it is manifestly unjust. *See In re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The jury is the sole judge of credibility and it is within their province to weigh the evidence and resolve any conflicts. The jury heard testimony from numerous witnesses and it was their function to accept or reject any, part, or all of the witnesses's testimony and the evidence. We cannot substitute our conclusions for those of the jury and it certainly is not within the province of this Court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witnesses's testimony. In considering all of the evidence, we do not find the verdict to be so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Issues No. One and Two are overruled.

## B. Abuse of Discretion Standard of Review

"A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Amador v. Tan*, 855 S.W.2d 131, 133 (Tex.App.-El Paso 1993, writ denied). Another way of stating the test is whether the act was arbitrary or unreasonable. *See Downer*, 701 S.W.2d at 242 (citing *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984)); *Amador*, 855 S.W.2d at 133. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not

demonstrate that an abuse of discretion has occurred. *See Downer*, 701 S.W.2d at 242 (citing *Southwestern Bell Telephone Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex. 1965)). A mere error of judgment is not an abuse of discretion. *See Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989).

## 1. Evidentiary Error

In Issue No. Three, Appellant argues that the trial court erred in sustaining objections to questions to Appellee Albert Lopez regarding his knowledge of risks posed by providing an operational firearm to a minor. Appellees assert that Appellant has waived any error by failing to make an offer of proof showing how Albert Lopez would have answered the proffered questions and that this Court cannot determine whether the exclusion of the evidence rises to the level of harmful error. We agree.

To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court. *See Johnson v. Garza*, 884 S.W.2d 831, 834 (Tex.App.-Austin 1994, writ denied). While the reviewing court may be able to discern from the record the nature of the evidence and the propriety of the trial court's ruling, without an offer of proof, we can never determine whether exclusion of the evidence was harmful. Thus, when evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal. *See Weng Enterprises, Inc. v. Embassy World Travel, Inc.*, 837 S.W.2d 217, 221 (Tex. App.-Houston [1st Dist.] 1992, no writ); Tex.R. Evid. 103. Compliance with the evidentiary rules on an offer of proof preserves error for appellate review. *See* Tex.R.App. P. 33.1(a)(1)(B). The reason for

the offer of proof is explained in *Anderson v. Higdon*, 695 S.W.2d 320 (Tex.App.-Waco 1985, writ ref'd n.r.e.):

> When tendered evidence is excluded, whether testimony of one's own witness on direct examination or testimony of the opponent's witness on cross-examination, in order to later complain it is necessary for the complainant to make an offer of proof on a bill of exception to show what the witness' [sic] testimony would have been. Otherwise, there is nothing before the appellate court to show reversible error in the trial court's ruling.

*Id.* at 325; *see also, Wyler Indus. Works, Inc. v. Garcia*, 999 S.W.2d 494, 511 (Tex. App.-El Paso 1999, no pet.).

While Counsel for Appellant stated what she would have asked Lopez, she never made an offer of proof showing how he would have answered the proffered questions. Without those answers, we cannot determine whether the excluded evidence can be the basis for reversible error. Issue No. Three is overruled.

### 2. Jury Instruction Error

■ In Issue No. Four, Appellant contends that the trial court erred in refusing to tender his requested negligence per se instruction. Appellees maintain that the requested instruction did not apply to this case. We agree.

■ We review the court's charge under an abuse of discretion standard. *See Texas Dep't of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). The trial court's failure to submit a requested instruction will constitute reversible error if the failure probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a)(1); *Sanchez v. King*, 932 S.W.2d 177, 182 (Tex.App.-El Paso 1996, no writ). Rule 273 provides that either party may present to the court and request written questions, definitions, and instructions to be given to the jury, and the court may give them or a part thereof, or may refuse to give them, as may be proper. *See* TEX.R. CIV. P. 273. The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict. *See* TEX.R. CIV. P. 277. Furthermore, the court shall submit the questions, instructions, and definitions that are raised by the written pleadings and the evidence. *See* TEX.R. CIV. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). An instruction is proper only if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence. *See McReynolds v. First Office Management*, 948 S.W.2d 342, 344 (Tex. App.-Dallas 1997, no writ). The trial court has considerable discretion in submitting explanatory instructions and definitions to enable the jury to render a verdict. *See Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974).

Appellant sought to have the jury instructed on negligence per se as a result of Appellees' violation of Texas Penal Code Sections 46.01(3) and 46.06(a)(2). *See* TEX. PEN.CODE ANN. §§ 46.01, 46.06 (Vernon 1994). Section 46.06(a)(2) provides: .

> (a) A person commits an offense if the person:
>
> . . .
>
> (2) intentionally or knowingly sells, rents, leases, or gives or offers to sell, rent, lease, or give to any child younger than 18 years any firearm, club, or illegal knife;

TEX. PEN.CODE ANN. § 46.06(a)(2) (Vernon 1994). A firearm is defined as follows:

> any device designed, made, or adapted to expel a projectile through a barrel by using the energy generated by an explosion or burning substance or any device readily convertible to that use.

Tex. Pen.Code Ann. § 46.01(3) (Vernon 1994).

Appellant asserts that Albert was a child under the age of eighteen and falls within the class of persons intended to be protected by the statute. Appellant argues that because he proved a violation of the statute, that the rifle would not fire with the trigger lock in place, but was capable of firing a bullet or projectile after Appellees removed the trigger lock, and because Appellees knew Albert was under the age of eighteen, the trial court erred in refusing to submit the instruction. Appellant provides no authority to support this contention and we are unaware of any.

Nonetheless, the Texas Supreme Court has held that not every penal statute creates an appropriate standard of care for civil liability purposes; therefore, a court is not required to adopt the penal statute's standard. *See Smith v. Merritt,* 940 S.W.2d 602, 607 (Tex.1997) (citing *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979); *Rudes v. Gottschalk,* 159 Tex. 552, 324 S.W.2d 201, 204 (1959)). Thus, we fail to find that the trial court acted without reference to any guiding rules and principles and did not abuse its discretion in failing to submit Appellant's requested instruction. Issue No. Four is overruled.

## C. Cross–Issue

In their sole cross-issue, Appellees assert that the trial court erred in failing to grant their motion for directed verdict and motion for judgment notwithstanding the verdict because there was no evidence that the minor's suicide was foreseeable or that their acts were a cause in fact of the suicide. Appellant argues that the evidence establishes Appellees' negligence was a cause in fact of his son's death and that Appellees could foresee they were creating a dangerous situation for the minor and others.

The components of proximate cause are cause in fact and foreseeability. *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995); *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). These elements cannot be established by mere conjecture, guess, or speculation. *See McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex. 1980); *Farley v. MM Cattle Co.,* 529 S.W.2d 751, 755 (Tex.1975). The test is whether the negligent act or omission was a substantial factor in bringing about injury, without which the harm would not have occurred. *See Doe,* 907 S.W.2d at 477. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *See Bell v. Campbell,* 434 S.W.2d 117, 120 (Tex.1968). Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 549–50 (Tex.1985); *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 790 (Tex.App.-El Paso 1996, writ denied). The danger of injury is foreseeable if its general character might reasonably have been anticipated. *See Nixon,* 690 S.W.2d at 550; *Duran,* 921 S.W.2d at 790. It asks whether the injury "might reasonably have been contemplated ..." as a result of the defendant's conduct. *McClure,* 608 S.W.2d at 903.

Appellees cite *Cowart v. Kmart Corp.,* 20 S.W.3d 779 (Tex. App.-Dallas 2000, pet. denied) as an instructive case. In *Cowart,* the survivors of an individual who was killed in a shooting incident brought a wrongful death action against Kmart for selling the ammunition used in the shooting. *See id.* at 782. In its motion for summary judgment, Kmart asserted that

the shooter's criminal conduct was an intervening and superseding cause of Cowart's death, and, "as such, [the alleged negligence of] Kmart was not the proximate cause of the injury to decedent." *Id.* The trial court granted Kmart's motion and the court of appeals affirmed, holding that, as a matter of law, Kmart's action in selling the ammunition to the minors was not a proximate cause of the death, because Kmart could not have foreseen that the ammunition would have been used to kill someone. *See id.* at 785–86.

The court observed that although the likelihood that the ammunition will be used is foreseeable at the time it is sold, at most the kind of danger Kmart could foresee from the sale was misuse or mishandling resulting from the buyer being too young to appreciate the danger of the ammunition. *See id.* at 784. The court acknowledged that a minor's ability to appreciate the danger of ammunition depends on the age of the minor. *See id.* However, because the minors in *Cowart* were seventeen years old, the court held they were old enough to appreciate the danger of negligent or intentional misuse of ammunition. *See id.*

Further, the court held there was no liability because Kmart could not foresee that the sale would result in negligent or intentional misuse of the ammunition by another, who was not a party to the sale. *See id.* at 785. The court found there was no evidence presented that should have alerted any Kmart employee that the minors would put the bullets in the hand of someone who would engage in criminal conduct. *See id.* at 786. The court also found that the acts directly leading to Cowart's shooting constituted an extraordinary, not a normal, sequence of events that was initiated after Kmart's sale of the ammunition. *See id.* at 785.

In the case at bar, it is undisputed that Albert committed suicide. Thus, we must determine whether there was *any* evidence presented that his death was foreseeable. Appellees testified that Albert did not do or say anything that led them to believe or suspect he was going to commit suicide. Omar Ramos, Albert's best friend, was with Albert at Appellee's shop and confirmed their testimony. Appellant and Albert's sister and mother testified that they had no idea that Albert was depressed or that he was considering suicide. Ramos testified that he knew Albert was upset, but he didn't tell anyone about it. Based on this testimony, there is no evidence that Albert said or did anything to put Appellees on notice of his intent to commit suicide. The evidence established that Albert's suicide was not foreseeable to his family. Likewise, the evidence established that it was not foreseeable to Appellees. Appellant was required to present some evidence that Appellees had notice that Albert intended to commit suicide. In failing to present such evidence, Appellant did not meet his burden of proof. Thus, the trial court erred in failing to grant Appellees' directed verdict. Appellees' Cross-Issue is sustained.

Having overruled each of Appellant's issues on review, but further having sustained Appellees' cross-point that there was no evidence of foreseeability or proximate cause, we reverse, the judgment of the trial court and render judgment in favor of Appellees' Cross Appellants.

LARSEN, J., Dissenting.

I disagree with several conclusions reached by the majority here, and therefore I must respectfully dissent.

### Factual sufficiency of zero damage findings

First, in detailing the evidence on Alberto Perez Sr.'s mental anguish and loss of companionship and society of his son, the majority recites *no* evidence supporting the jury's finding of zero damages. Instead, all evidence listed (and all that solicited at trial) supports a finding that Mr. Perez suffered terribly following his son's suicide, as almost any parent would. The majority opinion simply recites the deferential standard we apply in determining factual sufficiency of the evidence, then fails to engage in any analysis of what evidence supports the jury's damage findings and prevents them from being manifestly unjust. I can find none. Indeed, defendants in their response brief cite only two pieces of evidence that might support the jury's failure to award damages: that plaintiff suffered depression and sought treatment prior to his son's suicide, and that after his parents' divorce, Albert Jr. lived with his mother during the week, seeing his father mainly on weekends. In this case, the second fact I find irrelevant to the issue of mental anguish and loss of companionship. There is no evidence that plaintiff was anything but a loving, involved father, and that he and the deceased's mother were divorced does not diminish that. The first fact cited, while perhaps relevant, is answered by the testimony of Dr. Aboud that Perez's depression was qualitatively different, and much more severe, than any problems he had exhibited prior to the suicide.

In analyzing the evidence, I do not use the discredited "zero damages" rule. Nevertheless, I am mindful that courts of appeals possess equal power to review the sufficiency of evidence to support both a jury's affirmative and negative answers, including the jury's failure to award damages. *Pilkington v. Kornell,* 822 S.W.2d 223, 225 (Tex.App.-Dallas 1991). We are not entitled to reverse merely because we conclude more evidence supports an affirmative finding. *Id.* at 226. Rather, only where the great weight of the evidence, preponderates against the jury's verdict, may we reverse and remand for new trial. *Id.* This standard is variously formulated as where the verdict shocks the conscience, is clearly unjust, or clearly indicates bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). I conclude that the evidence here meets the *Pool* standard, and indeed I discern no evidence supporting the jury's decision to award no damages on the elements of mental anguish and loss of companionship in this case. Using the appropriate standard for analyzing the issue, I would sustain Perez's Issues No. One and Two.

### Negligence per se

Similarly, in its discussion of Issue No. Four, the majority not only fails to analyze the particular facts of this case, but does not even fully recite the law. Although I agree that, under the deferential standard of review we must apply, the trial court did not abuse its discretion in refusing the negligence per se instruction requested here, this set of facts is one of first impression and I believe deserves a more thorough analysis. My short attempt at one follows.

If the law on negligence per se were as the majority states, then no judge would ever abuse his or her discretion in failing to so charge the jury, simply because in a civil case "a court is not required to adopt the penal statute's standard." Although true, this statement is incomplete and misleading. In a case ignored by the majority, the Texas Supreme Court has set out a detailed set of criteria for determining when a penal statute should set the standard for tort liability. *Perry v. S.N.,* 973

S.W.2d 301, 304–07 (Tex.1998). *Perry* begins with the familiar threshold inquiries. Does the plaintiff (or here, the plaintiff's decedent) belong to the class that the statute was intended to protect? Is the plaintiff's injury of a type that the statute was designed to prevent? *Id.* at 305. Without doubt, Albert Perez, Jr., a minor, was within the class of persons intended to be protected by TEX. PEN.CODE ANN. § 46.06 (Vernon 1994). Suicide, along with accidents, irresponsible gunplay, and unsupervised access to firearms all of which can and do lead to terrible tragedy, are the type of injuries this penal provision are designed to prevent. I would hold that both prongs of the threshold inquiry are met here. The Supreme Court instructs us, however, that this does not end, our review only begins here. *Id.*

When determining whether it is appropriate to impose tort liability for violations of a penal statute, the Court has pointed to a number of non-exclusive factors which should guide the court in determining the question. *Id.* These factors include the following.

First, whether absent a change in the common law, the negligence per se action would derive its duty element solely from the criminal statute. *Id.* at 306. That is not the situation here, as discussed below in the section on foreseeability. I believe this prong of the test favors civil liability for violating this public safety statute.

Second, whether the statute clearly defines the prohibited or required conduct. *Id.* at 307. The statute at issue here does not clearly prohibit the Lopez's conduct, although certainly the spirit of the statute is to prevent minors from unsupervised access to operable firearms, which is exactly what their conduct permitted, with tragic results. Nevertheless, I cannot say that the language of TEX. PEN.CODE § 46.01(Vernon 1994) clearly prohibits removing a trigger lock from a firearm already in the apparently lawful possession of a minor.[1] This prong of the test favors the trial court's refusal to charge on negligence per se.

Third, whether applying negligence per se would create liability without fault. *Id.* at 308. Here, strict liability would not result, because the statute only criminalizes intentionally or knowingly supplying a firearm to a minor. This characteristic of the statute weighs in favor of civil liability.

Fourth, whether imposing negligence per se would impose ruinous liability disproportionate to the seriousness of the defendant's conduct. *Id.* This author believes the irresponsible conduct of defendants is serious in the extreme, but considering the age of Albert Jr. and his apparently legal possession of the gun, I believe there is room here for reasonable minds to disagree. In such a circumstance, we defer to the trial court's discretion.

Fifth, whether the injury resulted directly or indirectly from the violation of the statute. *Id.* The Perry court cautions that lack of direct causation is not in itself dispositive, as civil liability has been imposed in situations where statutory violations caused an injury by merely facilitation the tort of a third person. *Id.* at 309, (citing *El Chico Corp. v. Poole,* 732 S.W.2d 306, 312–13 (Tex.1987); *Nixon v.*

---

1. Had Albert, Jr. been under seventeen, a stronger case for negligence per se could be made for a violation of TEX. PEN.CODE ANN. § 46.13 (Vernon 1994), which provides that "a person commits an offense if a child [under age 17] gains access to a readily dis- chargeable firearm and the person with criminal negligence: (1) failed to secure the firearm; or (2) left the firearm in a place to which the person knew or should have known the child would gain access."

*Mr. Property Co.*, 690 S.W.2d 546, 548–49 (Tex.1985)). Here, the consequences were indirect and again, I would defer to the discretion of the trial court.

For these reasons, and not for those set out by the trial court, I would overrule Perez's issue four.

### Forseeability

Finally, in the majority's discussion on duty, I take issue with the characterization of the law on foreseeability. The majority's analysis rests on whether the Lopezes should have foreseen Albert Jr.'s *suicide.* I do not think this is the law. Rather, the particular injury need not have been foreseeable if the injury was of such a general character as might reasonably have been anticipated, and the injured party was so situated in relation to the wrongful act that the injury might reasonably have been foreseen. *Nixon v. Mr. Property Management,* 690 S.W.2d at 551. Thus, the relevant inquiry is not foreseeability of the suicide,[2] but whether it was foreseeable that an unsupervised minor would misuse a firearm after requesting that its existing trigger lock, to which the minor had no key, be removed. This is a far different question, and does not require proof that the minor exhibited signs of depression, aggression, or lack of judgment.[3] Gun shop owners are not psychologists, but they do have societal responsibilities inherent in the dangerous merchandise in which they traffic. *See* 18 U.S.C. 922(b)(1) (Licensed firearm dealers may not sell or deliver handguns to persons under age 21); *Wal-Mart Stores v. Tamez,* 960 S.W.2d 125, 128 (Tex.1997) (violation of federal law to sell any ammunition to child under 18).

Moreover, I would point to the actions of the Lopezes themselves as evidence that they, at least, found it foreseeable that Albert Jr. would misuse the firearm in some way. Knowing that he was not eighteen, they tried to call his home before removing the trigger lock, and "joking around," asked him what he intended to do with the gun, whether he would use to it "go out and rob anybody." To me this indicates their knowledge, on some level, that something was amiss.

---

**2.** Although sadly, it seems that adolescent suicide by firearm is all too foreseeable, in the practical sense if not the legal one. In a recent law review article, one commentator observed:

> Suicide is the second leading cause of death among youths between the ages of fifteen and nineteen, and the third leading cause of death for youths aged fifteen to twenty-four.... While the overall suicide rate in the United States has remained relatively stable since 1950, the rate of suicide for adolescents has more than tripled. Firearms account for 60 percent of all suicides in this country, including youth suicides.
> 
> . . .
> 
> A large and growing body of public health evidence confirms that easy access to firearms significantly increases the risk of suicide. These studies come in three forms pertinent to this Article: (1) studies showing that higher gun ownership rates correlate with higher suicide rates; (2) studies

showing that guns kept in the home greatly enhance the risk of suicide; and (3) most pertinent, studies showing that guns kept in the home greatly enhance the risk of suicide for adolescents. Andrew J. McClurg, *The Public Health Case for the Safe Storage of Firearms: Adolescent Suicides Add One More "Smoking Gun,"* 51 Hastings L.J. 953, 956–57, 965–66 (2000).

**3.** The Center for Disease Control reports that in 1999, there were a total of 3,385 firearms deaths involving children 19 and under. In that year, 2,896 children between 15 and 19 were killed in firearm related incidents. There were 1,078 total underage suicides, and there were 975 gun-related suicides of children between 15 and 19. *Office of Statistics and Programming, National Center for Injury Prevention and Control, CDC Center for Disease Control.*

In determining the legal issue of duty, we must remember that duty is the function of several interrelated factions, two of which are foreseeability and likelihood of injury weighed against the social utility of the defendant's conduct. *Greater Houston Trans. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *Doe v. Franklin,* 930 S.W.2d 921, 927 (Tex.App.-El Paso 1996, no writ). Here, I would find it patently foreseeable that, given the opportunity, a minor would misuse a firearm which was protected by a trigger lock to which the minor had no key. In balance, I would find the social utility of the Lopezes conduct to be nil; they certainly violated the spirit of laws designed to prevent minors from gaining access to guns. Under these facts, I conclude the trial court properly submitted this case to the jury. I would overrule Appellees cross-point.

## Conclusion

Because I conclude that the jury's failure to find damages for mental anguish and loss of companionship are against the great weight and preponderance of the evidence, and because I would overrule Appellees' cross-point, I would reverse the trial court's judgment and remand for a new trial.