Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MIGUEL ANGEL GARCIA, Individually         )
and as surviving parent of                                    ) 
CHRISTIAN GARCIA, Deceased,                     )                  No. 08-05-00152-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  327th District Court
)
EL PASO LIMITED PARTNERSHIP,               )                  of El Paso County, Texas
d/b/a SONIC DRIVE-IN NO. 9,                          )
) (TC# 2003-359)
                                    Appellee.                          )

O P I N I O N

            Miguel Angel Garcia brought a wrongful death action against El Paso Limited Partnership
d/b/a Sonic Drive-In No. 9 (Sonic) for negligently failing to provide adequate security at a Sonic
Drive-In which allegedly resulted in the shooting death of Appellant’s son by a member of a rival
gang. The trial court granted summary judgment in favor of Sonic. We affirm.
FACTUAL SUMMARY
            Appellant’s son, Christian Garcia, was a member of a gang known as FBI (Female Body
Inspectors). Luis Chavez Jr., a member of TYO (The Young Ones) had previously fought with
members of both FBI and BSA (Barrio San Angel). The problems between the groups escalated in
December of 2000 when Chavez fired a .22 rifle at a vehicle containing Edgar Dominguez, a
member of FBI. 
            On January 24, 2001, Chavez and another TYO member, Tony Cardoza, drove to Montwood
High School to visit with gang member friends. They left the school and drove to the home of FBI
member Fabian and broke the window of his truck by throwing a spark plug. They also broke the
car window of Christian’s brother, Angel Garcia. When they saw several of the FBI members
following them, Chavez and Cardoza stopped and confronted them in the street. Chavez and his
group then drove away but they later stopped at a Circle K after seeing Fabian’s and Angel’s car. 
They got out of their cars and began talking trash until Edward “Palma” Olivares, an FBI member,
lifted his shirt and showed a gun. Chavez and Palma agreed to have a six-on-six fight the next day. 
Christian was present during this exchange. The police quickly arrived and Chavez and his group
went to his house where they began planning the fight. Chavez, Cardoza, Mauricio Rosales, and
Ivan Acosta agreed to fight the FBI and BSA members wherever they found them the following day. 
            The next day, Chavez sawed off the barrels of a twelve gauge shotgun and a .22 rifle. 
Chavez, Acosta, Cardoza, and Josue Cristobal Villasenor put those weapons in a car and picked up
Rosales and Michael Garcia near Hanks High School. They drove to Montwood High School and
began looking for FBI and BSA members, but they did not find them. They next went to the Sonic
restaurant where Christian and several other FBI and BSA gang members, including Edgar
Dominguez, Daniel Avalos, and “Palma,” were eating. Chavez and company drove to a
Whataburger where Chavez loaded the shotgun and Rosales loaded the rifle. They then drove back
around to the location of Christian and the other FBI gang members. While Cardoza warned that
there were too many of them, Villasenor encouraged the assault, saying, “Just blast them, just blast
them.” Rosales opened the car door and fired the rifle once. Chavez stepped out of the car and fired
the shotgun twice, hitting Christian in the chest and legs. Chavez saw Christian fall to the ground
and grab his back while rolling around. Dominguez was struck in the buttocks by a shotgun pellet. 
Chavez and the others fled from the scene but were apprehended later that same day. Christian died
as a result of his injuries.
            Chavez admitted killing Christian in retaliation for the dispute which occurred the previous
day. He testified that he fired the weapon without any concern or consideration for those who were
present or might be hit. Chavez was convicted of murder and sentenced to serve a thirty year term
of imprisonment. He was also convicted of aggravated assault in connection with the shooting of
Dominguez, and sentenced to serve a five year term of imprisonment for that offense. 
            Appellant filed a premises liability suit against Sonic alleging that Sonic’s failure to provide
adequate security proximately caused Christian’s death. Sonic filed both no-evidence and traditional
motions for summary judgment based on multiple grounds, including that Christian’s injuries and
death resulted from intervening criminal conduct that rose to the level of a superseding cause and
that it owed no duty to protect Christian from the criminal acts of third parties. The summary
judgment evidence established that prior to the shooting, there had been no violent crimes reported
on the premises except for two fights between January and July of 2000 and Sonic was not aware
of any gang activity on its premises. Sonic’s management was aware of fights which had taken place
on a vacant lot located next to the Sonic, but it did not control those premises. From July through
October of 2000, Sonic had employed off-duty deputy sheriffs to deal with traffic issues between 11
a.m. to 1 p.m. such as racing and “kids peeling out their tires.” Sonic stopped employing security
guards because the problems with speeding had stopped. In the time leading up to the shooting,
there had been no pattern of fights or other violent activity on the premises. 
            Although school officials had received a tip regarding a fight between FBI and TYO
members, they did not relay this information to Sonic nor any other nearby businesses because they
did not know when or where the fight would take place. Sonic’s managers confirmed that they did
not receive any prior warnings that a fight was expected to take place on the day of the shooting. 
Jesus Aguirre, who had been an assistant principal at Montwood High School since January of 2000,
stated in his affidavit that he had spoken to the manager of the Sonic sometime prior to the shooting
about students who had been involved in fights at a vacant lot next to the Sonic restaurant, but he
was not aware of any fights which had actually taken place on Sonic’s premises. The trial court
sustained Sonic’s objections to Appellant’s summary judgment evidence and granted summary
judgment in favor of Sonic without specifying the grounds. 
PREMISES LIABILITY
            In his sole issue on appeal, Appellant challenges the summary judgment granted in favor of
Sonic. He specifically argues that Sonic’s summary judgment proof failed to conclusively establish
that there is no genuine issue of material fact as to one or more elements of his claim and there is
more than a scintilla of evidence to raise a fact issue on each element of his cause of action. We will
first consider whether the trial court properly granted traditional summary judgment on the ground
that Sonic negated the proximate cause element by showing that the gang members’ intentional
criminal acts were a superseding cause of Christian’s death.



Standard of Review

            In a traditional summary judgment proceeding, the standard of review on appeal is whether
the successful movant at the trial level carried the burden of showing that there is no genuine issue
of material fact and that judgment should be granted as a matter of law. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr’s Supermarkets, Inc., 921 S.W.2d 778, 784
(Tex.App.--El Paso 1996, writ denied). Thus, the question on appeal is not whether the summary
judgment proof raises fact issues as to required elements of the movant’s cause or claim, but whether
the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material
fact as to one or more elements of the movant’s cause or claim. Gibbs v. General Motors Corp., 450
S.W.2d 827, 828 (Tex. 1970); Duran, 921 S.W.2d at 784. In resolving these issues, all evidence
favorable to the non-movant must be taken as true and all reasonable inferences, including any
doubts, must be resolved in the non-movant’s favor. Nixon v. Mr. Property Mgmt. Co., Inc., 690
S.W.2d 546, 548-49 (Tex. 1985); Duran, 921 S.W.2d at 784. A trial court properly grants summary
judgment in favor of a defendant if that party conclusively establishes all elements of an affirmative
defense, or conclusively negates at least one element of the plaintiff’s claim. American Tobacco Co.,
Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). In a case where the trial court’s judgment does
not specify the ground or grounds relied upon for its ruling, the summary judgment must be affirmed
if any of the theories advanced is meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).
Elements of the Claim
            The essential elements of a negligence claim are the existence of a legal duty; a breach of that
duty; and damages proximately caused by that breach. D. Houston, Inc. v. Love, 92 S.W.3d 450, 454
(Tex. 2002); Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). In
general, a person has no legal duty to protect another from the criminal acts of a third person. See
Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998); Walker v. Harris,
924 S.W.2d 375, 377 (Tex. 1996). However, one who controls the security and safety of a premises
does have a duty to use ordinary care to protect invitees from criminal acts of third parties if he
knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee.
Timberwalk, 972 S.W.2d at 756. Whether a duty exists is a question of law for the court to decide.
Id.
Proximate Cause and Superseding Cause
            Proximate cause has two elements: cause-in-fact and foreseeability. Travis v. City of
Mesquite, 830 S.W.2d 94, 98 (Tex. 1992)(op. on reh’g); Palacio v. AON Properties, Inc., 110
S.W.3d 493, 498 (Tex.App.--Waco 2003, no pet.). Foreseeability requires that the defendant, “as
a person of ordinary intelligence, should have anticipated the dangers his negligent act created for
others.” Palacio, 110 S.W.3d at 498, quoting Cowart v. Kmart Corp., 20 S.W.3d 779, 783
(Tex.App.--Dallas 2000, pet. denied). As a general rule, criminal conduct of a third-party is a
superseding cause that extinguishes the liability of the previous actor. Cowart, 20 S.W.3d at 783;
see Phan Son Van v. Pena, 990 S.W.2d 751, 753 (Tex. 1999). But when the third party’s criminal
conduct is a foreseeable result of the prior negligence, the criminal act does not excuse the previous
tortfeasor’s liability. Id.
            Section 448 of the Restatement (Second) of Torts was adopted by the Supreme Court in
Humble Oil & Ref. Co. v. Whitten, 427 S.W.2d 313, 315 (Tex. 1968). This provision articulates the
concept of superseding cause as follows:
The act of a third person in committing an intentional tort or crime is a superseding
cause of harm to another resulting therefrom, although the actor’s negligent conduct
created a situation which afforded an opportunity to the third person to commit such
a tort or crime, unless the actor at the time of his negligent conduct realized or should
have realized the likelihood that such a situation might be created, and that a third
person might avail himself of the opportunity to commit such a tort or crime. 

Restatement (Second) of Torts § 448 (1965).           Several factors must be considered in
determining whether an intervening force rises to the level of a superseding cause:
(a) the fact that the intervening force brings about harm different in kind from that
which would otherwise have resulted from the actor’s negligence;
 
(b) the fact that the intervening force’s operation or the consequences thereof appear
after the event to be extraordinary rather than normal in view of the circumstances
existing at the time of the force’s operation; 
 
(c) the fact that the intervening force is operating independently of any situation
created by the actor’s negligence, or, on the other hand, is or is not a normal result
of such a situation; 
 
(d) the fact that the operation of the intervening force is due to a third person’s act or
to his failure to act; 
 
(e) the fact that the intervening force is due to an act of a third person which is
wrongful toward the other and as such subjects the third person to liability to him; 
 
(f) the degree of culpability of a wrongful act of a third person which sets the
intervening force in motion. 

Phan, 990 S.W.2d at 754, citing Humble Oil & Ref. Co. v. Whitten, 427 S.W.2d 313, 315 (Tex.
1968) and Restatement (Second) of Torts § 442 (1965). To be a superseding cause, the
intervening force must not be ordinarily or reasonably foreseeable. Phan, 990 S.W.2d at 754.
            In the context of summary judgment practice, a defendant who seeks to negate foreseeability
as an element of proximate cause must prove more than that the intervening third-party criminal
conduct occurred. Phan, 990 S.W.2d at 754. Such a defendant has the burden to prove that the
conduct was not foreseeable. Id. When a defendant presents evidence that the plaintiff’s injuries
resulted from intervening criminal conduct that rises to the level of a superseding cause based on
considerations like those in Section 442, the defendant has negated the ordinary foreseeability
element of proximate cause. Id. The burden then shifts to the plaintiff to raise a fact issue by
presenting controverting evidence that, despite the extraordinary and abnormal nature of the
intervening force, the criminal act was foreseeable. Id. at 754, 756.
            Considering the first three factors, Chavez’s intervening act did not bring about the kind of
harm that would have otherwise resulted from Sonic’s alleged negligent failure to provide adequate
security on the premises.


 The targeted, deliberate, and retaliatory nature of the criminal conduct
committed by Chavez distinguishes the harm that actually occurred from the kind of harm that one
would expect to occur due to Sonic’s alleged negligence. See Palacio, 110 S.W.3d at 499 (targeted,
deliberate criminal conduct by third parties in deliberately going to particular apartment and asking
for tenant’s guest by name, and the harm inflicted when they shot a guest execution-style were
extraordinary in nature and not of the type generally contemplated by the duty of a landowner to
protect against the criminal acts of a third party). Chavez’s premeditated and retaliatory murder of
a rival gang member is extraordinary and cannot be characterized as a normal consequence of failing
to have a security guard on the premises of a drive-in restaurant. The summary judgment evidence
established that the intervening force operated independently of any situation created by Sonic’s
alleged negligence and is not a normal result of that situation. Chavez and the TYO members had
already determined that they would fight the FBI members wherever they found them that day and
regardless of the circumstances. That is exactly what they did. Chavez was not deterred by
Cardoza’s warning that too many FBI members were present and he fired without regard for who
was present or whom he might hit. If they had found the FBI members at the high school or at
another restaurant, or at a convenience store as had occurred the previous day, they would have
engaged in violent criminal conduct there rather than at the Sonic. Accordingly, we conclude that
Sonic established in its favor the first three factors of Section 442.
            It is beyond dispute that the remaining factors, which focus on the third party’s wrongful
conduct and culpability, support the conclusion that the TYO gang members’ criminal conduct was
a superseding cause of Christian’s death. Chavez and several of the other members were found
criminally liable for Christian’s death. Thus, Sonic met its burden of proof to establish that the
intentional, violent criminal acts committed by Chavez and the other TYO members were not
foreseeable and were a superseding cause of Christian’s death. By establishing superseding cause,
Sonic negated the ordinary foreseeability element of proximate cause.
            In response to the motion for summary judgment, Appellant produced the video deposition
of Lazaro Valencia, a member of FBI. Valencia was aware of several fights which had taken place
between students and rival gang members at Sonic during the lunch hour. All of the fights were
brief, lasting less than a minute, and involved shoving, punching, and kicking. This evidence does
not establish that, despite the extraordinary and abnormal nature of the superseding cause, there was
some indication to Sonic that the targeted, deliberate criminal conduct would occur on its premises. 
Consequently, the trial court properly granted summary judgment in favor of Sonic. We overrule
Appellant’s sole issue on appeal and affirm the judgment of the trial court.

July 27, 2006                                                               
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Parks, JJ.
(Parks, J., sitting by assignment)