IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00318-CV

 

Javier Vazquez Izaguire,

                                                                                                Appellant

 v.

 

AMY COX, SCOTT RUSSELL, DAVID MARTIN,

and Ronnie Carter dba Ronnie's 

Garage & Wrecker Service,

                                                                                                Appellees

 

 

 



From the 66th District Court

Hill County, Texas

Trial Court No. 42,539

 



MEMORANDUM  Opinion



 








            Javier Vazquez Izaguire appeals a
take-nothing judgment in his lawsuit against David Martin and Ronnie Carter dba
Ronnie’s Garage and Wrecker Service for $4,000 in cash he alleges was taken
after his truck was impounded.  He argues that the trial court erred by: (1) failing
to find breach of a bailment agreement; (2) excluding testimony from the chief
of police; (3) limiting testimony from his investigator; and (4) excluding a
detective’s file.  We affirm.

FACTUAL BACKGROUND

            Hillsboro Police Officers Amy Cox and
Scott Russell arrested Izaguire for driving while intoxicated.  Martin, an
employee of Ronnie’s Garage, towed Izaguire’s truck.  During the booking
process, Izaguire told Russell that his wallet contained $5,000.  When the
wallet was opened, it contained only a few dollars.  Izaguire said nothing more
about where any money might be located.  Russell believed that Izaguire was
being truthful until he opened the wallet.

Izaguire told his uncle Juan Rodriguez and his
friend Jesus Morales that he had placed $4,000 in the console of his truck.  Morales
conveyed this information to bail bondsman Ronald Jones.  Jones thought it
unusual that police would leave a large amount of money in the vehicle.  He
spoke with Martin who stated that the officers had searched the truck and it
contained no money.  Martin told Jones that it would be a couple of hours
before the truck could be retrieved because he and his wife were going to
dinner.  Jones drove by Ronnie’s Garage and saw the truck parked in front.

Jones told Morales that Martin said the truck
contained no money.  Rodriguez and Morales conveyed this information to
Izaguire.  When they went to retrieve the truck, it was parked in front of the
garage.  According to Morales, Martin seemed “a little edgy and little bit
upset,” said there was no money in the truck, and would not allow Izaguire to
look in the truck.  Martin gave Izaguire a discount.  When Izaguire recovered
the truck, the money was gone.  Morales was suspicious of Martin but did not
know who took the money or if the truck even contained any money.  Jones felt
that he would be apprehensive to deal with Martin in a business relationship.

Izaguire met with Russell to file a report regarding
the missing money.  He had discussed the issue with Martin, who appeared
nervous.  He believed that Martin took the money.  Russell had no reason to
believe that Izaguire was lying about the money being in the truck or
falsifying his statement.  He found it strange that someone would claim that
money was in a wallet, but then claim that it was in a different location.  Izaguire
subsequently filed suit, alleging a cause of action for conversion against Cox,
Russell, and Martin and a cause of action for bailment against Carter.

At a bench trial, Izaguire testified that, two
weeks before his arrest, he cashed a check at a liquor store.  The money in the
truck came from this check.  He initially stored the money in his home, but
could not recall where.  He then placed the money in another vehicle.  He never
placed the money in his wallet.  Once he placed the money in the truck, for the
purpose of paying some bills, he never removed the money.  On the day of his
arrest, he visited his friend Andreas Rubio.  He parked the truck in front of
Rubio’s house and locked the truck.  Later that night, he visited his cousin
Merced Rodriguez.  He did not lock the truck while at Merced’s house, but the
truck was in his view because he and Merced remained outside.  When he and Merced went to the store, Merced remained in the truck while Izaguire went inside to
purchase beer.  Izaguire admitted that it was possible that Merced knew about
the money.  Merced denied any knowledge of the money, testifying that he never
saw a large amount of money or took a large amount of money.  Izaguire last saw
the money when he stopped at the store.

Cox did not recall looking in the console at the
time of Izaguire’s arrest.  She would normally look in the console but could
not remember all the vehicles that she had inventoried.  She did see some check
stubs for large amounts of money, but did not see or take any money.  Russell testified
that he did not open the console or take any money.  According to both
officers, Izaguire said nothing about the truck containing a substantial amount
of money or anything valuable.  When money or valuables are located in a
vehicle, the item is given to the person being arrested so that it will go with
that person to the jail.

Izaguire admitted that, in order to protect the
money, it would have been best to tell Cox and Russell about the money, but he
did not know how because of the language barrier, given that he speaks mostly
Spanish.  Neither did he trust the officers.  He knew the money was not in his
wallet, but did not intentionally lie because he did not know how to tell the
officers where the money was located.  He may have attempted to do so, but
because he did not know how, he told them that it was in the wallet.  He did
not recall mentioning the wallet incident to Detective Cruz Gonzales.

Cox testified that once the wrecker service takes
a vehicle, it has control and possession of the vehicle.  Carter, the owner of
Ronnie’s Garage, admitted that the truck was in the possession and control of
Ronnie’s Garage, which was responsible for money taken from a vehicle in its
possession.  The City required compliance with guidelines mandating storage of
vehicles inside a building or locked/fenced area.  Were Carter advised that a
vehicle contained money or a valuable item, he would have placed the item in
his personal safe.  Items had gone missing before.  It did appear that Martin
had waived the storage fee for Izaguire.  When he asked Martin about the
missing money, Martin claimed he knew nothing about it.  Because of Izaguire’s
complaint, he lost his permit to tow vehicles for the City.  For unrelated
reasons, Martin was no longer employed with Ronnie’s Garage.

Martin admitted parking the truck in front of the
garage, but claimed that this was common for convenience purposes because
someone usually retrieves the vehicle fairly quickly.  He did not search the
truck for valuables, open the console, or take any money.  He did not recall
seeing any valuables, being advised of or discussing the money, going out to
eat with his wife, or promising Izaguire a discount.  He did recall releasing
the truck to Izaguire.  He terminated his employment with Ronnie’s Garage for
financial reasons.  He was aware of the alleged missing money at that time.

Detective Gonzales investigated Izaguire’s allegations. 
Izaguire told Gonzales that the truck had contained $4,000.  Gonzales testified
that it would have been reasonable to search the console because an intoxicated
person might hide alcohol there.  It should not take long to find money in a
console.  He believed that the money was in the truck at the time it was towed
and it was not possible that the money was not in the truck.  He agreed that
this conclusion could be incorrect had a witness failed to tell the truth.  He also
admitted that Izaguire’s intoxication may have prevented him from knowing where
he put the money or that Izaguire did not know the location of the money, given
that he initially claimed that the money was in his wallet even though it was
not.  Gonzales concluded that neither Russell nor Cox took the money.  Probable
cause did not exist to arrest Martin, who had failed to cooperate with the
investigation.  

Coy West, Izaguire’s retained expert investigator,
confirmed that Izaguire had the means to acquire this sum of money and that the
money was in the truck both on the day of his arrest and at the time of his
arrest.  West eliminated all suspects except Carter and Martin.  Martin told
West that he did not take the money, did not know anything about it, had worked
for Ronnie’s Garage for several years, Carter trusted him, and he parked the
truck in front of the garage under a street light.  West testified that Martin
was required to place the truck behind a locked fence.  He believed that probable
cause existed to arrest Martin because he had access to the money, he had not
told Carter about the allegations, the money existed, Izaguire said the money
was in the truck, and the truck was at all times in Izaguire’s presence.  He also
believed that Merced was being truthful.  Although West agreed that
intoxication can cause people to forget things, he did not believe that
Izaguire’s intoxication contributed to loss of the money.

However, at the time of arrest, Cox smelled the
odor of alcohol when she approached Izaguire’s truck and observed Izaguire
leaning against the truck for balance.  Russell testified that the results of
Izaguire’s intoxilyzer tests were .203 and .194, which constitutes a high level
of intoxication that could possibly affect a person’s mental and physical
faculties.  Izaguire admitted drinking approximately fourteen to eighteen beers
and being drunk at the time of his arrest.  He denied being so drunk as to be
unaware of the money’s location or unaware that someone might be trying to take
the money.  Merced did not notice that Izaguire was “that drunk” on the night
of his arrest.

The trial court ruled against Izaguire, finding
that none of the defendants were liable on Izaguire’s claims.  Izaguire
appealed.[1] 

EVIDENTIARY ISSUES

In his second issue, Izaguire challenges the
exclusion of testimony of the chief of police.  Izaguire’s third issue
challenges the trial court’s limitation of West’s testimony.  Izaguire
contends, in his fourth issue, that the trial court improperly excluded
Gonzales’s file.  We review a trial court’s evidentiary rulings, including expert testimony,
for an abuse of discretion. 
See In the Interest of J.P.B., 180 S.W.3d 570, 575 (Tex. 2005); see also K-Mart Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000).

Exclusion of the Police Chief’s Testimony

            Izaguire asked Gonzales whether he had
a copy of the agreement between Carter and the City of Hillsboro.  Gonzales
responded that the chief of police would have a copy.  Izaguire requested that
the City be required to produce police chief Carl Cain as a witness and argued
that defense counsel had agreed to make “good faith efforts” to produce him. 
Defense counsel denied making this agreement and refused to produce Cain.  The
trial court noted that the City is not a party and instructed the parties to
move on.

            The next day, Izaguire sought to call Cain
as a witness.  Defense counsel objected because Cain had not been identified in
discovery as a person with knowledge of relevant facts.  Izaguire responded
that Cain was identified as a “person with potential third-party liability;”
thus, it is implied that he had “some knowledge of the suit…”  He argued that “[t]here is no surprise that the chief of police,
as the supervisor of the two defendants, could be a potential third party and
-- implied in his position under both the ordinance and his relationship with
the defendants.”  The trial
court excluded Cain’s testimony because he was not designated.  Izaguire
objected because: (1) Cain was identified as a potential third party; and (2)
Gonzales could not answer questions about the permit and Cain is the
“designated supervisor of the ordinance pertaining to the pulling of
vehicles.”  The trial court declined to admit Cain’s testimony.  Izaguire made
a bill of exception identifying nine questions he would have asked Cain.[2]

Under Rule of Evidence 103, “error cannot be predicated on the exclusion of
evidence unless the substance of the evidence was made known to the trial court
through an offer of proof or was apparent from the context.”  Hooper v. Chittaluru, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); see Tex. R.
Evid. 103(a)(2).
 The proponent of the excluded evidence must “show what the witness’ testimony would
have been.”  Anderson v. Higdon, 695 S.W.2d 320, 325 (Tex.
App.—Waco 1985, writ ref’d n.r.e.) (emphasis added).  “To preserve
error, the offer of proof must be specific enough to enable the reviewing court
to determine the admissibility of the disputed evidence.”  Hooper,
222 S.W.3d at 107.

Izaguire did not identify the answers he expected
to receive to the proffered questions or establish what Cain’s testimony would have
been if allowed to testify.  See Perez v. Lopez, 74 S.W.3d 60, 66-67 (Tex. App.—El Paso 2002, no pet.) (counsel stated
what she would have asked the witness, but did not make an offer of proof
showing how the witness would have answered the proffered questions); see
also Potter v. Mullen, No.
05-04-00014-CV, 2005 Tex. App. LEXIS
4304, at *10-11 (Tex. App.—Dallas June 3, 2005, pet. denied) (mem.
op.) (“Potter did not make an offer
of proof of her answers to these questions, and the answers are not apparent
from the context of the record”).  The answers to some of these questions might
have been available through the testimony of other witnesses, but the substance
of Cain’s testimony is not apparent from the record.  Izaguire’s bill of exceptions is insufficient to
preserve his complaint for appellate review.  See Perez, 74 S.W.3d at 66-67; see also Potter,
2005 Tex. App. LEXIS 4304, at *10-11; Tex. R.
Evid. 103(a)(2). 
We overrule issue two.

Limitation of Coy West’s Testimony

            On direct examination, in the process
of explaining his disagreements with Gonzales’s report, West testified about his
reasons for believing that probable cause did not exist to arrest Martin.  He referenced
polygraph examinations.  Counsel for Carter objected, arguing that West’s
opinions had not been disclosed in Izaguire’s response to requests for
disclosure and West should not be permitted to testify to probable cause or
Gonzales’s report.  Izaguire’s response had merely stated that West would
testify to his investigation of the case and the truthfulness of Merced and Rubio.  The trial court permitted West to testify about his disagreements with
Gonzales’s report.

            In doing so, West testified that there
was no basis to support the allegation that Izaguire claimed to have money in
his wallet.  Counsel for Cox and Russell objected that this opinion had not
been provided, arguing that West’s conclusions based on his investigation should
have been disclosed.  Izaguire argued that he had only discovered West’s
conclusion within the last twenty-four hours because it had not become an issue
until trial.  According to Izaguire, the wallet allegation suggested that he
was lying, there was no basis for this allegation in Gonzales’s report, and
West was merely trying to establish the basis for the allegation.  The trial
court stated that: (1) had conclusions been reached in the last twenty-four
hours, a recess would be had to “start discovery all over again” and take
depositions; (2) Izaguire bore a duty to advise the defense of West’s opinions;
and (3) one exhibit, which Izaguire had for several months, clearly stated that
Izaguire claimed having $5,000 in his wallet.  The trial court questioned why
Izaguire could not have provided a report or West’s opinions.  Defense counsel argued
that Izaguire’s failure to recognize the wallet allegation as an issue should
not permit him to present the testimony.  The trial court instructed Izaguire
to “move along.”

            Because his opinions had not been
disclosed, West was not allowed to testify to whether the police were negligent
when completing the inventory, whether Martin took the money, the difference
between a vehicle inventory and a vehicle search, the responsibility of the
wrecker company to the police, the omissions of any of the suspects, or whether
the officers contributed to loss of the money.  When Izaguire asked whether
West had observed anything in the course of his investigation that might be
beneficial to the trial court, counsel for Cox and Russell objected.  The trial
court instructed Izaguire to make his question more specific.  Izaguire
responded that the question would be objected to regardless of whether it was
specific or broad.

            Izaguire also asked the trial court to
accept West “as an expert in the investigation of this case.”  The trial court accepted
West as an expert “[f]or the limited purposes that were disclosed” in Izaguire’s
response to disclosures.  After this point, West was not permitted to testify
about whether he observed any omissions in the handling of the inventory,
processing, or response to statements or whether he eliminated the officers as
suspects.

Rule of Civil Procedure 194.2 requires a party to
disclose, in a response to disclosure, the “general substance of the [testifying]
expert’s mental impressions and opinions and a brief summary of the basis for
them.”  Tex. R. Civ. P.
194.2(f)(3).  Failure to provide a
complete response or amend or supplement an incomplete response will result in
automatic exclusion of the testimony unless the proponent establishes good
cause for the failure to provide the information or that the opposing party is
not unfairly surprised or prejudiced by the expert’s testimony.  See Tex. R. Civ. P. 193.1 (party responding to discovery must provide
a complete response based on information reasonably available at that time); see also Tex. R. Civ. P. 193.5
(if a party learns that the response is
incomplete or incorrect, the party must amend or supplement the response); Tex. R. Civ. P. 193.6(a); (b).  “Trial
courts have discretion to exclude
expert testimony when the subject matter and opinions related to the
proposed testimony have not been disclosed.”  In re Commitment of Marks,
230 S.W.3d 241, 244 (Tex. App.—Beaumont 2007, no pet.).

According to the testimony and arguments at trial,
Izaguire’s disclosure response merely identified the subject matter to which
West would testify, i.e., his investigation of the case and the
truthfulness of Merced and Rubio, but did not disclose either West’s opinions
or mental impressions regarding this subject matter or any other subject matter. 
His disclosure response was incomplete and West’s testimony as to undisclosed
matters was automatically subject to exclusion.  See Tex. R. Civ. P. 193.6(a). 
Thus, Izaguire was required to establish either good cause for his failure to disclose West’s
opinions and mental impressions or that the defendants would not be prejudiced
by West’s testimony.  See Tex. R. Civ. P.
193.6(b).

Izaguire made
no attempt to establish either.  See Marks, 230 S.W.3d at
244-45 (Marks failed to request a
finding of good cause or lack of surprise or prejudice; thus, record failed to demonstrate that the
trial court abused its discretion by excluding expert’s testimony);
see also Jackson v. Maul, No.
04-02-00873-CV, 2003 Tex. App. LEXIS
8614, at *4-5 (Tex. App.—San Antonio Oct. 8, 2003, no pet.) (mem. op.) (“Because Jackson did not even attempt to demonstrate good cause or
the absence of unfair prejudice
or surprise in the trial court, the record does not reflect an abuse of
discretion”).  The only explanation offered as to why West’s opinions regarding
the wallet allegation were not disclosed was that his opinion became available during
trial because the allegation had not previously been an issue.  Yet, Izaguire
had been aware of the allegation for several months.  He could have easily
provided a discovery response stating that West would provide expert testimony regarding
the basis for the wallet allegation.  No other reasons were provided to explain
why none of West’s opinions had been previously disclosed.    

Accordingly, we cannot say that the trial court
abused its discretion by excluding or limiting portions of West’s testimony that
expressed undisclosed opinions or mental impressions.  See Marks,
230 S.W.3d at 244-45; see also Jackson,
2003 Tex. App. LEXIS 8614, at *4-5.  We
overrule issue three.       

Exclusion of Gonzales’s File

            During direct examination of Gonzales,
Izaguire sought to admit “all of the documents obtained by [] Gonzales in his
investigation…,” including admission of polygraph examinations, for “purposes
of the weight and credibility of the evidence.”  Counsel for Carter objected
that polygraph examinations are inadmissible, he was unaware of what other
documents Izaguire referred to, and the file contained hearsay.  Counsel for
Cox and Russell objected if the evidence was being offered to prove the truth
of the matter asserted.  He later stated that he had no objection if the
parties agreed to admission, but informed the trial court that the file did
contain inadmissible evidence.  Izaguire argued that courts, the district and
county attorneys, and state officials often rely upon polygraph examinations as
a “tool, not as a determination.”  He added that the polygraph examinations
were for the “purpose of [Gonzales] relying upon one of dozens of tools to be
able to reach his opinion” that the money was in the car.  The trial court
excluded the file.

            Izaguire subsequently attempted to
offer the file as a business record.  The trial court responded that calling
the documents “business records” did not “jump by all the other matters.” 
Izaguire argued that the “contents of [Gonzales’s] investigation are relevant
to his conclusion” and asked that the inadmissible portions of the file be
redacted.  The trial court responded that Izaguire could offer the portions he
believed were admissible.  Izaguire informed the trial court that the entire file
was admissible.  The trial court stood by its previous ruling excluding the
file.

            On direct examination of West,
Izaguire inquired whether West received all the police reports, including
Gonzales’s report.  Counsel for Carter objected because the report was not in
evidence.  Izaguire responded that, although he believed Gonzales’s file
contained no objectionable material, he had redacted the portions he assumed
were objectionable and provided the redacted file to defense counsel.  He asked
to admit the file.  Defense counsel objected that the document still contained
hearsay and was being offered through an improper witness.  The trial court
declined to admit the file until a “sponsoring witness” was on the stand. 
Izaguire responded that Gonzales had previously provided and identified the
file, the file was in the record, and Gonzales could be recalled.  The defense
explained that the hearsay objections would still remain.  The trial court
noted that the file did contain hearsay.  Izaguire asked the trial court to
“consider the qualifications and the reliance of both lieutenant -- Detective
Gonzales, who had generated the report, and Coy West, who we would ask that the
Court identify as an expert witness…”  The trial court refused to admit the
file, but noted that “experts may rely on things that are not admissible, so
that’s a different matter.”  Izaguire stated, “that is exactly what we’ve asked
the Court to do.”  The trial court held that West could not quote from inadmissible
evidence, but could testify to his conclusions based upon the evidence.

            Arguing that the file should have been
admitted, Izaguire contends that Rule of Evidence 104(e), regarding a trial
court’s decision as to preliminary questions on the admissibility of evidence,
was not “intended to limit in any way the introduction of probative evidence
relevant to the weight and credibility of other testimony.”  See Tex. R. Evid. 104(e) (“This rule does not limit the right of a party to introduce
before the jury evidence relevant to weight or credibility”).

            We first note that the trial court
properly excluded evidence of the polygraph examinations.  See In the Interest of B.N.B., 246 S.W.3d 403, 410 (Tex. App.—Dallas 2008, no
pet.) (polygraph examinations are not
admissible in civil
proceedings); see also Posner v. Dallas County Child
Welfare Unit of Tex. Dep't of Human Servs., 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ
denied) (same).  Second, as
the proponent of the evidence, Izaguire bore the burden of demonstrating admissibility.  See E.I. du Pont de Nemours & Co. v.
Robinson, 923 S.W.2d 549, 557 (Tex. 1995).  Only relevant evidence
is admissible.  See Tex. R. Evid.
402.  At trial, Izaguire merely argued that the file was relevant for “purposes
of the credibility and weight of the evidence,” but failed to explain how
the file was relevant.  Neither does he do so on appeal.  He failed to
discharge his burden of establishing admissibility.  Thus, the trial court did
not abuse its discretion by excluding the evidence.  We overrule issue four.  

 

 

BAILMENT

            In his first issue, Izaguire contends that the evidence is factually
insufficient to support the trial court’s findings of fact and conclusions of
law.  Specifically, he challenges the
trial court’s failure to find breach of a bailment agreement.

Standard of Review

A court’s findings of fact
are reviewed in the same manner as jury findings.  See Catalina
v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994); Chevron Pipeline Co. v. Strayhorn,
212 S.W.3d 779, 783 (Tex. App.—Austin 2006, pet. denied); Lucas
v. Texas Dep't of Protective & Regulatory Servs., 949 S.W.2d 500, 502
(Tex. App.—Waco 1997), overruled on other grounds by In the Interest of J.F.C., 96
S.W.3d 256 (Tex. 2002).  A factual sufficiency challenge requires us to reverse only if, “considering all
the evidence, the finding is so contrary to the great weight and preponderance
of the evidence as to be manifestly unjust.”  Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex.
App.—Waco 2000, pet. denied).

Analysis

The elements of bailment are: (1) delivery of
personal property from one person to another for a specific purpose; (2)
acceptance by the transferee of such delivery; (3) an agreement that the
purpose will be fulfilled; and (4) an understanding that property will be
returned to the transferor.  Cessna
Aircraft Co. v. Aircraft Network, L.L.C., 213 S.W.3d 455, 462 (Tex. App.—Dallas 2006, pet. denied).

In its findings of fact and conclusions of law, the trial court found that Martin did not convert Izaguire’s money and that Carter did not breach any duty.  Izaguire
contends that the “preponderance of the evidence” establishes breach of a
bailment agreement because the truck was entrusted to Ronnie’s Garage, Martin
took possession of the truck while in the course and scope of his employment,
and Martin failed to return the money.

However, we cannot say that the evidence is
factually sufficient to establish delivery or acceptance of the money.  No one
disputes that Martin and Ronnie’s Garage took possession and control of
Izaguire’s truck.  Whether they took possession and control of the money depends
on whether the truck actually contained the money.

The only evidence that the money was in the truck
at the time it was towed came from Izaguire.  Yet, Izaguire was intoxicated at
the time of his arrest, with a blood alcohol level of .203 and .194.  He did
not tell Cox, Russell, or Martin that the truck contained a substantial amount
of money.  He admitted telling officers that his wallet contained $5,000, when
he knew this to be incorrect.  Gonzales testified that Izaguire had denied
telling the officers about money in his wallet.  When the money was not in his
wallet, Izaguire dropped the subject.  Although Gonzales and West did not
believe that Izaguire’s intoxication contributed to loss of the money, they
both testified that intoxication can affect a person’s mental faculties. 
Izaguire’s credibility was certainly called into question. 

Moreover, other individuals had access to the
truck and any items in the truck.  Gonzales admitted that eliminating these
individuals as suspects did not mean that they did not commit the crime.  He
further admitted that a witness’s failure to tell the truth could alter his
conclusions, making it possible that the money was not in the truck at the time
it was towed.

Whether the truck contained the money was a
question within the sole judgment of the trial court.  See Canal Ins. Co. v. Hopkins, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet.
denied) (“When reviewing factual
sufficiency issues arising from a bench trial, we must remember that the trial
court, as the trier of fact, is the sole judge of the credibility of the
witnesses and the weight to be given their testimony”).  The trial court could
reasonably conclude that the truck did not contain the money at the time it was
towed; thus, the money was never delivered to Ronnie’s Garage or accepted by
Ronnie’s Garage and no breach of a bailment agreement occurred.  The trial
court’s judgment is not so contrary to the great weight and preponderance of
the evidence as to be manifestly unjust.  Checker Bag, 27 S.W.3d at 633.  We overrule Izaguire’s first issue.

The trial court’s judgment is
affirmed.

 

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed 

Opinion delivered and
filed October 1, 2008

[CV06]









[1]               Izaguire filed an unopposed motion
for partial dismissal of his appeal against Cox and Russell.  We granted the motion in an unpublished order.  See
Izaguire v. Cox, No. 10-07-00318-CV, slip op. at 1 (Tex. App.—Waco Mar. 26, 2008, order) (per curiam).  No remaining appellee has filed a brief.





[2]               Izaguire sought to ask Cain about: (1) a letter he
received from Russell; (2) the removal of  Ronnie’s Garage from the rotation
list; (2) whether he required compliance with DPS safety and storage
guidelines; (3) whether he oversaw the Hillsboro city ordinance; (4) whether a
written agreement existed with Ronnie’s Garage as contemplated by the city
ordinance and testified to by Carter; (5) the City’s requirements for the
return of vehicles and personal property to the owner; (6) whether the
inventory sheet was correctly completed and, if not, what should have been done
in accordance with guidelines and requirements; (7) alternatives to the
officers’ handling of the vehicle and Izaguire’s property, and Izaguire’s
identification of the money; (8) the officers’ responsibilities prior to the
vehicle being towed; and (9) whether the officer discharged her responsibility
to Izaguire under the applicable guidelines and requirements.