

# IN THE
# TENTH COURT OF APPEALS

### No. 10-07-00318-CV

**JAVIER VAZQUEZ IZAGUIRE,**

                                                                                    **Appellant**

 **v.**

**AMY COX, SCOTT RUSSELL, DAVID MARTIN,
AND RONNIE CARTER DBA RONNIE'S
GARAGE & WRECKER SERVICE,**

                                                                                    **Appellees**

**From the 66th District Court
Hill County, Texas
Trial Court No. 42,539**

## MEMORANDUM OPINION

Javier Vazquez Izaguire appeals a take-nothing judgment in his lawsuit against David Martin and Ronnie Carter dba Ronnie's Garage and Wrecker Service for $4,000 in cash he alleges was taken after his truck was impounded. He argues that the trial court erred by: (1) failing to find breach of a bailment agreement; (2) excluding testimony from the chief of police; (3) limiting testimony from his investigator; and (4) excluding a detective's file. We affirm.

**FACTUAL BACKGROUND**

Hillsboro Police Officers Amy Cox and Scott Russell arrested Izaguire for driving while intoxicated. Martin, an employee of Ronnie's Garage, towed Izaguire's truck. During the booking process, Izaguire told Russell that his wallet contained $5,000. When the wallet was opened, it contained only a few dollars. Izaguire said nothing more about where any money might be located. Russell believed that Izaguire was being truthful until he opened the wallet.

Izaguire told his uncle Juan Rodriguez and his friend Jesus Morales that he had placed $4,000 in the console of his truck. Morales conveyed this information to bail bondsman Ronald Jones. Jones thought it unusual that police would leave a large amount of money in the vehicle. He spoke with Martin who stated that the officers had searched the truck and it contained no money. Martin told Jones that it would be a couple of hours before the truck could be retrieved because he and his wife were going to dinner. Jones drove by Ronnie's Garage and saw the truck parked in front.

Jones told Morales that Martin said the truck contained no money. Rodriguez and Morales conveyed this information to Izaguire. When they went to retrieve the truck, it was parked in front of the garage. According to Morales, Martin seemed "a little edgy and little bit upset," said there was no money in the truck, and would not allow Izaguire to look in the truck. Martin gave Izaguire a discount. When Izaguire recovered the truck, the money was gone. Morales was suspicious of Martin but did not know who took the money or if the truck even contained any money. Jones felt that he would be apprehensive to deal with Martin in a business relationship.

Izaguire met with Russell to file a report regarding the missing money. He had discussed the issue with Martin, who appeared nervous. He believed that Martin took the money. Russell had no reason to believe that Izaguire was lying about the money being in the truck or falsifying his statement. He found it strange that someone would claim that money was in a wallet, but then claim that it was in a different location. Izaguire subsequently filed suit, alleging a cause of action for conversion against Cox, Russell, and Martin and a cause of action for bailment against Carter.

At a bench trial, Izaguire testified that, two weeks before his arrest, he cashed a check at a liquor store. The money in the truck came from this check. He initially stored the money in his home, but could not recall where. He then placed the money in another vehicle. He never placed the money in his wallet. Once he placed the money in the truck, for the purpose of paying some bills, he never removed the money. On the day of his arrest, he visited his friend Andreas Rubio. He parked the truck in front of Rubio's house and locked the truck. Later that night, he visited his cousin Merced Rodriguez. He did not lock the truck while at Merced's house, but the truck was in his view because he and Merced remained outside. When he and Merced went to the store, Merced remained in the truck while Izaguire went inside to purchase beer. Izaguire admitted that it was possible that Merced knew about the money. Merced denied any knowledge of the money, testifying that he never saw a large amount of money or took a large amount of money. Izaguire last saw the money when he stopped at the store.

Cox did not recall looking in the console at the time of Izaguire's arrest. She would normally look in the console but could not remember all the vehicles that she

had inventoried. She did see some check stubs for large amounts of money, but did not see or take any money. Russell testified that he did not open the console or take any money. According to both officers, Izaguire said nothing about the truck containing a substantial amount of money or anything valuable. When money or valuables are located in a vehicle, the item is given to the person being arrested so that it will go with that person to the jail.

Izaguire admitted that, in order to protect the money, it would have been best to tell Cox and Russell about the money, but he did not know how because of the language barrier, given that he speaks mostly Spanish. Neither did he trust the officers. He knew the money was not in his wallet, but did not intentionally lie because he did not know how to tell the officers where the money was located. He may have attempted to do so, but because he did not know how, he told them that it was in the wallet. He did not recall mentioning the wallet incident to Detective Cruz Gonzales.

Cox testified that once the wrecker service takes a vehicle, it has control and possession of the vehicle. Carter, the owner of Ronnie's Garage, admitted that the truck was in the possession and control of Ronnie's Garage, which was responsible for money taken from a vehicle in its possession. The City required compliance with guidelines mandating storage of vehicles inside a building or locked/fenced area. Were Carter advised that a vehicle contained money or a valuable item, he would have placed the item in his personal safe. Items had gone missing before. It did appear that Martin had waived the storage fee for Izaguire. When he asked Martin about the missing money, Martin claimed he knew nothing about it. Because of Izaguire's complaint, he lost his

permit to tow vehicles for the City. For unrelated reasons, Martin was no longer employed with Ronnie's Garage.

Martin admitted parking the truck in front of the garage, but claimed that this was common for convenience purposes because someone usually retrieves the vehicle fairly quickly. He did not search the truck for valuables, open the console, or take any money. He did not recall seeing any valuables, being advised of or discussing the money, going out to eat with his wife, or promising Izaguire a discount. He did recall releasing the truck to Izaguire. He terminated his employment with Ronnie's Garage for financial reasons. He was aware of the alleged missing money at that time.

Detective Gonzales investigated Izaguire's allegations. Izaguire told Gonzales that the truck had contained $4,000. Gonzales testified that it would have been reasonable to search the console because an intoxicated person might hide alcohol there. It should not take long to find money in a console. He believed that the money was in the truck at the time it was towed and it was not possible that the money was not in the truck. He agreed that this conclusion could be incorrect had a witness failed to tell the truth. He also admitted that Izaguire's intoxication may have prevented him from knowing where he put the money or that Izaguire did not know the location of the money, given that he initially claimed that the money was in his wallet even though it was not. Gonzales concluded that neither Russell nor Cox took the money. Probable cause did not exist to arrest Martin, who had failed to cooperate with the investigation.

Coy West, Izaguire's retained expert investigator, confirmed that Izaguire had the means to acquire this sum of money and that the money was in the truck both on

the day of his arrest and at the time of his arrest. West eliminated all suspects except Carter and Martin. Martin told West that he did not take the money, did not know anything about it, had worked for Ronnie's Garage for several years, Carter trusted him, and he parked the truck in front of the garage under a street light. West testified that Martin was required to place the truck behind a locked fence. He believed that probable cause existed to arrest Martin because he had access to the money, he had not told Carter about the allegations, the money existed, Izaguire said the money was in the truck, and the truck was at all times in Izaguire's presence. He also believed that Merced was being truthful. Although West agreed that intoxication can cause people to forget things, he did not believe that Izaguire's intoxication contributed to loss of the money.

However, at the time of arrest, Cox smelled the odor of alcohol when she approached Izaguire's truck and observed Izaguire leaning against the truck for balance. Russell testified that the results of Izaguire's intoxilyzer tests were .203 and .194, which constitutes a high level of intoxication that could possibly affect a person's mental and physical faculties. Izaguire admitted drinking approximately fourteen to eighteen beers and being drunk at the time of his arrest. He denied being so drunk as to be unaware of the money's location or unaware that someone might be trying to take the money. Merced did not notice that Izaguire was "that drunk" on the night of his arrest.

The trial court ruled against Izaguire, finding that none of the defendants were liable on Izaguire's claims. Izaguire appealed.[1]

## EVIDENTIARY ISSUES

In his second issue, Izaguire challenges the exclusion of testimony of the chief of police. Izaguire's third issue challenges the trial court's limitation of West's testimony. Izaguire contends, in his fourth issue, that the trial court improperly excluded Gonzales's file. We review a trial court's evidentiary rulings, including expert testimony, for an abuse of discretion. *See In the Interest of J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *see also K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000).

### Exclusion of the Police Chief's Testimony

Izaguire asked Gonzales whether he had a copy of the agreement between Carter and the City of Hillsboro. Gonzales responded that the chief of police would have a copy. Izaguire requested that the City be required to produce police chief Carl Cain as a witness and argued that defense counsel had agreed to make "good faith efforts" to produce him. Defense counsel denied making this agreement and refused to produce Cain. The trial court noted that the City is not a party and instructed the parties to move on.

The next day, Izaguire sought to call Cain as a witness. Defense counsel objected because Cain had not been identified in discovery as a person with knowledge of relevant facts. Izaguire responded that Cain was identified as a "person with potential

---

[1] Izaguire filed an unopposed motion for partial dismissal of his appeal against Cox and Russell. We granted the motion in an unpublished order. *See Izaguire v. Cox*, No. 10-07-00318-CV, slip op. at 1 (Tex. App.—Waco Mar. 26, 2008, order) (per curiam). No remaining appellee has filed a brief.

third-party liability;" thus, it is implied that he had "some knowledge of the suit…" He argued that "[t]here is no surprise that the chief of police, as the supervisor of the two defendants, could be a potential third party and -- implied in his position under both the ordinance and his relationship with the defendants." The trial court excluded Cain's testimony because he was not designated. Izaguire objected because: (1) Cain was identified as a potential third party; and (2) Gonzales could not answer questions about the permit and Cain is the "designated supervisor of the ordinance pertaining to the pulling of vehicles." The trial court declined to admit Cain's testimony. Izaguire made a bill of exception identifying nine questions he would have asked Cain.[2]

Under Rule of Evidence 103, "error cannot be predicated on the exclusion of evidence unless the substance of the evidence was made known to the trial court through an offer of proof or was apparent from the context." *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see* TEX. R. EVID. 103(a)(2). The proponent of the excluded evidence must "show what the witness' testimony *would have been*." *Anderson v. Higdon*, 695 S.W.2d 320, 325 (Tex. App.—Waco 1985, writ ref'd n.r.e.) (emphasis added). "To preserve error, the offer of proof must be

---

[2]     Izaguire sought to ask Cain about: (1) a letter he received from Russell; (2) the removal of Ronnie's Garage from the rotation list; (2) whether he required compliance with DPS safety and storage guidelines; (3) whether he oversaw the Hillsboro city ordinance; (4) whether a written agreement existed with Ronnie's Garage as contemplated by the city ordinance and testified to by Carter; (5) the City's requirements for the return of vehicles and personal property to the owner; (6) whether the inventory sheet was correctly completed and, if not, what should have been done in accordance with guidelines and requirements; (7) alternatives to the officers' handling of the vehicle and Izaguire's property, and Izaguire's identification of the money; (8) the officers' responsibilities prior to the vehicle being towed; and (9) whether the officer discharged her responsibility to Izaguire under the applicable guidelines and requirements.

specific enough to enable the reviewing court to determine the admissibility of the disputed evidence." *Hooper*, 222 S.W.3d at 107.

Izaguire did not identify the answers he expected to receive to the proffered questions or establish what Cain's testimony would have been if allowed to testify. *See Perez v. Lopez*, 74 S.W.3d 60, 66-67 (Tex. App.—El Paso 2002, no pet.) (counsel stated what she would have asked the witness, but did not make an offer of proof showing how the witness would have answered the proffered questions); *see also Potter v. Mullen*, No. 05-04-00014-CV, 2005 Tex. App. LEXIS 4304, at *10-11 (Tex. App.—Dallas June 3, 2005, pet. denied) (mem. op.) ("Potter did not make an offer of proof of her answers to these questions, and the answers are not apparent from the context of the record"). The answers to some of these questions might have been available through the testimony of other witnesses, but the substance of Cain's testimony is not apparent from the record. Izaguire's bill of exceptions is insufficient to preserve his complaint for appellate review. *See Perez*, 74 S.W.3d at 66-67; *see also Potter*, 2005 Tex. App. LEXIS 4304, at *10-11; TEX. R. EVID. 103(a)(2). We overrule issue two.

**Limitation of Coy West's Testimony**

On direct examination, in the process of explaining his disagreements with Gonzales's report, West testified about his reasons for believing that probable cause did not exist to arrest Martin. He referenced polygraph examinations. Counsel for Carter objected, arguing that West's opinions had not been disclosed in Izaguire's response to requests for disclosure and West should not be permitted to testify to probable cause or Gonzales's report. Izaguire's response had merely stated that West would testify to his

investigation of the case and the truthfulness of Merced and Rubio. The trial court permitted West to testify about his disagreements with Gonzales's report.

In doing so, West testified that there was no basis to support the allegation that Izaguire claimed to have money in his wallet. Counsel for Cox and Russell objected that this opinion had not been provided, arguing that West's conclusions based on his investigation should have been disclosed. Izaguire argued that he had only discovered West's conclusion within the last twenty-four hours because it had not become an issue until trial. According to Izaguire, the wallet allegation suggested that he was lying, there was no basis for this allegation in Gonzales's report, and West was merely trying to establish the basis for the allegation. The trial court stated that: (1) had conclusions been reached in the last twenty-four hours, a recess would be had to "start discovery all over again" and take depositions; (2) Izaguire bore a duty to advise the defense of West's opinions; and (3) one exhibit, which Izaguire had for several months, clearly stated that Izaguire claimed having $5,000 in his wallet. The trial court questioned why Izaguire could not have provided a report or West's opinions. Defense counsel argued that Izaguire's failure to recognize the wallet allegation as an issue should not permit him to present the testimony. The trial court instructed Izaguire to "move along."

Because his opinions had not been disclosed, West was not allowed to testify to whether the police were negligent when completing the inventory, whether Martin took the money, the difference between a vehicle inventory and a vehicle search, the responsibility of the wrecker company to the police, the omissions of any of the suspects, or whether the officers contributed to loss of the money. When Izaguire asked

whether West had observed anything in the course of his investigation that might be beneficial to the trial court, counsel for Cox and Russell objected. The trial court instructed Izaguire to make his question more specific. Izaguire responded that the question would be objected to regardless of whether it was specific or broad.

Izaguire also asked the trial court to accept West "as an expert in the investigation of this case." The trial court accepted West as an expert "[f]or the limited purposes that were disclosed" in Izaguire's response to disclosures. After this point, West was not permitted to testify about whether he observed any omissions in the handling of the inventory, processing, or response to statements or whether he eliminated the officers as suspects.

Rule of Civil Procedure 194.2 requires a party to disclose, in a response to disclosure, the "general substance of the [testifying] expert's mental impressions and opinions and a brief summary of the basis for them." TEX. R. CIV. P. 194.2(f)(3). Failure to provide a complete response or amend or supplement an incomplete response will result in automatic exclusion of the testimony unless the proponent establishes good cause for the failure to provide the information or that the opposing party is not unfairly surprised or prejudiced by the expert's testimony. *See* TEX. R. CIV. P. 193.1 (party responding to discovery must provide a complete response based on information reasonably available at that time); *see also* TEX. R. CIV. P. 193.5 (if a party learns that the response is incomplete or incorrect, the party must amend or supplement the response); TEX. R. CIV. P. 193.6(a); (b). "Trial courts have discretion to exclude expert testimony when the subject matter and opinions related to the proposed testimony have not been

disclosed." *In re Commitment of Marks*, 230 S.W.3d 241, 244 (Tex. App.—Beaumont 2007, no pet.).

According to the testimony and arguments at trial, Izaguire's disclosure response merely identified the subject matter to which West would testify, *i.e.*, his investigation of the case and the truthfulness of Merced and Rubio, but did not disclose either West's opinions or mental impressions regarding this subject matter or any other subject matter. His disclosure response was incomplete and West's testimony as to undisclosed matters was automatically subject to exclusion. *See* TEX. R. CIV. P. 193.6(a). Thus, Izaguire was required to establish either good cause for his failure to disclose West's opinions and mental impressions or that the defendants would not be prejudiced by West's testimony. *See* TEX. R. CIV. P. 193.6(b).

Izaguire made no attempt to establish either. *See Marks*, 230 S.W.3d at 244-45 (Marks failed to request a finding of good cause or lack of surprise or prejudice; thus, record failed to demonstrate that the trial court abused its discretion by excluding expert's testimony); *see also Jackson v. Maul*, No. 04-02-00873-CV, 2003 Tex. App. LEXIS 8614, at *4-5 (Tex. App.—San Antonio Oct. 8, 2003, no pet.) (mem. op.) ("Because Jackson did not even attempt to demonstrate good cause or the absence of unfair prejudice or surprise in the trial court, the record does not reflect an abuse of discretion"). The only explanation offered as to why West's opinions regarding the wallet allegation were not disclosed was that his opinion became available during trial because the allegation had not previously been an issue. Yet, Izaguire had been aware of the allegation for several months. He could have easily provided a discovery

response stating that West would provide expert testimony regarding the basis for the wallet allegation. No other reasons were provided to explain why none of West's opinions had been previously disclosed.

Accordingly, we cannot say that the trial court abused its discretion by excluding or limiting portions of West's testimony that expressed undisclosed opinions or mental impressions. *See Marks*, 230 S.W.3d at 244-45; *see also Jackson*, 2003 Tex. App. LEXIS 8614, at *4-5. We overrule issue three.

## Exclusion of Gonzales's File

During direct examination of Gonzales, Izaguire sought to admit "all of the documents obtained by [] Gonzales in his investigation…," including admission of polygraph examinations, for "purposes of the weight and credibility of the evidence." Counsel for Carter objected that polygraph examinations are inadmissible, he was unaware of what other documents Izaguire referred to, and the file contained hearsay. Counsel for Cox and Russell objected if the evidence was being offered to prove the truth of the matter asserted. He later stated that he had no objection if the parties agreed to admission, but informed the trial court that the file did contain inadmissible evidence. Izaguire argued that courts, the district and county attorneys, and state officials often rely upon polygraph examinations as a "tool, not as a determination." He added that the polygraph examinations were for the "purpose of [Gonzales] relying upon one of dozens of tools to be able to reach his opinion" that the money was in the car. The trial court excluded the file.

Izaguire subsequently attempted to offer the file as a business record. The trial court responded that calling the documents "business records" did not "jump by all the other matters." Izaguire argued that the "contents of [Gonzales's] investigation are relevant to his conclusion" and asked that the inadmissible portions of the file be redacted. The trial court responded that Izaguire could offer the portions he believed were admissible. Izaguire informed the trial court that the entire file was admissible. The trial court stood by its previous ruling excluding the file.

On direct examination of West, Izaguire inquired whether West received all the police reports, including Gonzales's report. Counsel for Carter objected because the report was not in evidence. Izaguire responded that, although he believed Gonzales's file contained no objectionable material, he had redacted the portions he assumed were objectionable and provided the redacted file to defense counsel. He asked to admit the file. Defense counsel objected that the document still contained hearsay and was being offered through an improper witness. The trial court declined to admit the file until a "sponsoring witness" was on the stand. Izaguire responded that Gonzales had previously provided and identified the file, the file was in the record, and Gonzales could be recalled. The defense explained that the hearsay objections would still remain. The trial court noted that the file did contain hearsay. Izaguire asked the trial court to "consider the qualifications and the reliance of both lieutenant -- Detective Gonzales, who had generated the report, and Coy West, who we would ask that the Court identify as an expert witness…" The trial court refused to admit the file, but noted that "experts may rely on things that are not admissible, so that's a different matter." Izaguire stated,

"that is exactly what we've asked the Court to do." The trial court held that West could not quote from inadmissible evidence, but could testify to his conclusions based upon the evidence.

Arguing that the file should have been admitted, Izaguire contends that Rule of Evidence 104(e), regarding a trial court's decision as to preliminary questions on the admissibility of evidence, was not "intended to limit in any way the introduction of probative evidence relevant to the weight and credibility of other testimony." *See* TEX. R. EVID. 104(e) ("This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility").

We first note that the trial court properly excluded evidence of the polygraph examinations. *See In the Interest of B.N.B.*, 246 S.W.3d 403, 410 (Tex. App.—Dallas 2008, no pet.) (polygraph examinations are not admissible in civil proceedings); *see also Posner v. Dallas County Child Welfare Unit of Tex. Dep't of Human Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) (same). Second, as the proponent of the evidence, Izaguire bore the burden of demonstrating admissibility. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex. 1995). Only *relevant* evidence is admissible. *See* TEX. R. EVID. 402. At trial, Izaguire merely argued that the file was relevant for "purposes of the credibility and weight of the evidence," but failed to explain *how* the file was relevant. Neither does he do so on appeal. He failed to discharge his burden of establishing admissibility. Thus, the trial court did not abuse its discretion by excluding the evidence. We overrule issue four.

## BAILMENT

In his first issue, Izaguire contends that the evidence is factually insufficient to support the trial court's findings of fact and conclusions of law. Specifically, he challenges the trial court's failure to find breach of a bailment agreement.

### Standard of Review

A court's findings of fact are reviewed in the same manner as jury findings. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Chevron Pipeline Co. v. Strayhorn*, 212 S.W.3d 779, 783 (Tex. App.—Austin 2006, pet. denied); *Lucas v. Texas Dep't of Protective & Regulatory Servs.*, 949 S.W.2d 500, 502 (Tex. App.—Waco 1997), *overruled on other grounds by In the Interest of J.F.C.*, 96 S.W.3d 256 (Tex. 2002). A factual sufficiency challenge requires us to reverse only if, "considering all the evidence, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust." *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied).

### Analysis

The elements of bailment are: (1) delivery of personal property from one person to another for a specific purpose; (2) acceptance by the transferee of such delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that property will be returned to the transferor. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 462 (Tex. App.—Dallas 2006, pet. denied).

In its findings of fact and conclusions of law, the trial court found that Martin did not convert Izaguire's money and that Carter did not breach any duty. Izaguire contends that the "preponderance of the evidence" establishes breach of a bailment agreement because the truck was entrusted to Ronnie's Garage, Martin took possession of the truck while in the course and scope of his employment, and Martin failed to return the money.

However, we cannot say that the evidence is factually sufficient to establish delivery or acceptance of the money. No one disputes that Martin and Ronnie's Garage took possession and control of Izaguire's truck. Whether they took possession and control of the money depends on whether the truck actually contained the money.

The only evidence that the money was in the truck at the time it was towed came from Izaguire. Yet, Izaguire was intoxicated at the time of his arrest, with a blood alcohol level of .203 and .194. He did not tell Cox, Russell, or Martin that the truck contained a substantial amount of money. He admitted telling officers that his wallet contained $5,000, when he knew this to be incorrect. Gonzales testified that Izaguire had denied telling the officers about money in his wallet. When the money was not in his wallet, Izaguire dropped the subject. Although Gonzales and West did not believe that Izaguire's intoxication contributed to loss of the money, they both testified that intoxication can affect a person's mental faculties. Izaguire's credibility was certainly called into question.

Moreover, other individuals had access to the truck and any items in the truck. Gonzales admitted that eliminating these individuals as suspects did not mean that

they did not commit the crime. He further admitted that a witness's failure to tell the truth could alter his conclusions, making it possible that the money was not in the truck at the time it was towed.

Whether the truck contained the money was a question within the sole judgment of the trial court. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet. denied) ("When reviewing factual sufficiency issues arising from a bench trial, we must remember that the trial court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony"). The trial court could reasonably conclude that the truck did not contain the money at the time it was towed; thus, the money was never delivered to Ronnie's Garage or accepted by Ronnie's Garage and no breach of a bailment agreement occurred. The trial court's judgment is not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *Checker Bag*, 27 S.W.3d at 633. We overrule Izaguire's first issue.

The trial court's judgment is affirmed.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Vance, and
    Justice Reyna
Affirmed
Opinion delivered and filed October 1, 2008
[CV06]