In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00024-CV
_____

IN RE COMMITMENT OF MARTIN LUTHER LOVINGS

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-04-03520-CV

MEMORANDUM OPINION

Martin Luther Lovings challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2012) (the SVP statute). The State was required to prove beyond a reasonable doubt that appellant is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062(a) (West 2010). A person is a "sexually violent predator" subject to commitment if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a) (West 2010). A "behavioral abnormality" is "a congenital or acquired condition that, by

1

affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2012). "A condition which affects either emotional capacity or volitional capacity to the extent a person is predisposed to threaten the health and safety of others with acts of sexual violence is an abnormality which causes serious difficulty in behavior control." *In re Commitment of Almaguer*, 117 S.W.3d 500, 506 (Tex. App.— Beaumont 2003, pet. denied).

In 2003, appellant was convicted of sexual assault and aggravated sexual assault of a child. He was sentenced to ten years in prison for each conviction, to be served concurrently. He was serving these sentences at the time of the civil commitment trial. A jury found that he is a sexually violent predator.

## EXCLUSION OF EVIDENCE

In appellant's first issue he argues that the trial court erred in sustaining the State's objection to Dr. Sheri Gaines's testimony regarding her rate of error in civil commitment evaluations. Error may be predicated on a ruling that excludes a party's evidence only if the substance of the evidence was made known to the court by the offer, or was apparent from the context within which questions were asked. Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a)(1); *Ludlow v. DeBerry*, 959

2

S.W.2d 265, 269-70 (Tex. App.—Houston [14th Dist.] 1997, no writ). "To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court." *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex. App.—El Paso 2002, no pet.).

Appellant's counsel made an offer of proof covering other areas of Gaines's testimony, but did not ask questions regarding Gaines's rate of error. Because appellant failed to include questions and elicit answers regarding Gaines's rate of error during his offer of proof, we cannot determine whether the exclusion of evidence was harmful. Appellant's complaint was not preserved. *See id*.; *see also* Tex. R. App. P. 44.1. Issue one is overruled.

CLOSING ARGUMENT

In issue two, appellant asserts that the trial court abused its discretion and committed reversible error in allowing improper jury argument. Objecting numerous times during the State's closing argument, appellant contended that the State was arguing outside the scope of the evidence presented. On appeal, he complains specifically that the trial court erred in allowing the State's counsel to refer to Dr. McGarrahan's opinions and the victims' statements.

Appellant objected to the State's comment to the jury that "you heard two experts that have answered [the question of whether appellant suffers from a

3

behavioral abnormality that makes him likely to engage in a predatory act of sexual violence] in the affirmative[.]" Appellant argues that the State referred to McGarrahan's testimony as though she had actually testified.

Dr. Gaines testified that in forming her opinion she relied in part on the opinion of Dr. McGarrahan, a doctor who served on the multidisciplinary team and who initially concluded that appellant has a behavioral abnormality. The jury heard Gaines testify as to her opinion and her review of McGarrahan's opinion. The State was summarizing the evidence presented through Gaines's testimony.

Appellant also objected to the State's reiteration of facts from records and allegations made in victim statements from appellant's underlying convictions. Appellant argues that the State referred to the victim statements as if they were actually entered into evidence. Dr. Gaines testified that she reviewed this material as part of her evaluation of appellant.

The State clarified in its closing argument that, "[a]s you heard Dr. Gaines testify, she reviewed and relied upon the facts of [appellant's] offenses in reaching [her] decision -- in reaching her conclusion." The State's closing arguments challenged by appellant were summations of the evidence. Appellant has failed to show that the State's arguments were improper. *See In re Commitment of Marks*,

230 S.W.3d 241, 247 (Tex. App.—Beaumont 2007, no pet.). Issue two is overruled.

SUFFICIENCY OF THE EVIDENCE

In his third issue, appellant contends the trial court erred by denying his motion for directed verdict. He complains that Gaines's testimony regarding her diagnoses for him was conclusory. Appellant also argues that Gaines essentially relied on the fact that appellant had repeated sexually violent offenses and other "prior bad acts" as the basis for her testimony that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. In issue four, he challenges the factual sufficiency of the evidence to support the jury's finding that he is a sexually violent predator.[1] He maintains Gaines only supported her conclusion that he will likely commit future sexually violent offenses by describing his prior bad acts, and that she failed to consider the protective factors in concluding that he is likely to sexually reoffend.

We address issues three and four together. We review a trial court's ruling on a motion for directed verdict under a legal sufficiency standard. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). In reviewing the legal sufficiency of the

---

[1] The State argues that this Court should dispense with the factual sufficiency review in SVP cases. We have previously rejected the State's request to do so. *See In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

evidence, we review all of the evidence in the light most favorable to the verdict to determine whether a rational jury could have found beyond a reasonable doubt that appellant is a sexually violent predator. *See In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). In reviewing a challenge to the factual sufficiency of the evidence in SVP cases, we must weigh the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that compels ordering a new trial. *In re Commitment of Day*, 342 S.W.3d at 213.

Dr. Gaines, a forensic psychiatrist, testified appellant has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Gaines's methodology included reviewing records and conducting an interview with appellant. The records reviewed included police records, medical records, prison records, expert depositions and reports, and other documents. She testified that the records are important to her evaluation because past behavior is a good indicator of future behavior.

Dr. Gaines diagnosed appellant with post-traumatic stress disorder, paraphilia not otherwise specified, polysubstance dependence in remission in a controlled environment, psychotic disorder not otherwise specified, borderline intellectual functioning, and antisocial personality disorder. Gaines explained that

6

the records indicated the appellant has a history of committing both sexual and nonsexual offenses.

Dr. Gaines testified that, according to the interview and the records, appellant did not admit to the sexual offenses but claimed that the victims were either his girlfriends or prostitutes. According to Gaines, various facts show appellant's inability to control his behavior in a socially acceptable way: appellant was brazen in luring his teenage victims during the day; he planned the offenses so that the victims could not escape; and he committed such horrible acts over a lengthy period of time. Gaines indicated that appellant's prison disciplinary record shows his continued pattern of difficulty in following rules and controlling his behavior even in the highly structured prison environment. She explained that the way he interacted with his victims -- calling them prostitutes, giving them money, and saying "this is how girls do things" -- shows he is confused about reality. She described appellant's paraphilia as a condition that is chronic and lifelong.

Gaines identified appellant's risk factors for re-offending: post-traumatic stress disorder, his sexual deviancy and psychopathic traits, his age, his hallucinations telling him to kill people, his limited IQ which results in an inability to have the full benefit of treatment, use of violence in his offenses, his reoffending while out on bond for the first offense, his substance dependence, and the absence

of monitoring for medication compliance if he is discharged. She also was concerned with appellant's lack of remorse and his blaming of the victims. She identified his protective factors as his steady income with Social Security disability, some family support, and his participation in trade and therapy programs during his incarceration. She testified that she reviewed a report by Dr. McGarrahan, who served on the multidisciplinary team and initially evaluated appellant. Gaines stated that although she does not administer actuarials to individuals whom she evaluates, she reviewed the actuarials administered by McGarrahan to appellant. According to McGarrahan's report, appellant scored in the "moderate-high" risk category for reoffending.

Appellant testified that at six years of age he was in the room when his brother murdered his mother. In the past, he has heard voices that tell him to kill people and he has hallucinations. While in prison, he has on occasion refused his psychiatric medications. He admitted to past substance use. According to appellant, the two incidents for which he was convicted were consensual encounters with prostitutes.

Dr. Marisa Mauro, a forensic psychologist, testified for appellant. In determining whether appellant suffers from a behavioral abnormity, she reviewed the same type of documents that Gaines reviewed, interviewed appellant, and

administered actuarials. Mauro diagnosed appellant with post-traumatic stress disorder, polysubstance dependence, and borderline intellectual functioning with possible mild retardation. She does not agree with Gaines's diagnoses of paraphilia not otherwise specified, sexual deviancy, psychotic disorder, or antisocial personality disorder. Mauro administered the Static-2002R and Static-99R actuarial tests on appellant. She explained that she evaluates the scores differently than other experts and concluded that appellant was not likely to reoffend. She does not believe that a person's level of empathy or the admission of wrong-doing in the past is important in determining future dangerousness. She identified appellant's risk factors for reoffending: he has two offenses and a juvenile criminal history. She identified the positive factors: he has support from a foster family, he has re-established family relationships, he has demonstrated the ability to form appropriate romantic relationships, his adjustment to prison has been relatively positive, and he is able to identify stressors in his life and the times when he needs help. Mauro testified she does not believe appellant suffers from a behavioral abnormality.

The jury determines the credibility of the witnesses and the weight to be given their testimony. *In re Commitment of Mullens*, 92 S.W.3d at 887. A jury may draw reasonable inferences from the evidence. *See Lacour v. State*, 8 S.W.3d 670,

9

671 (Tex. Crim. App. 2000). In addition to Dr. Gaines's testimony concerning appellant's condition, appellant's difficulty in controlling his behavior can be reasonably inferred from his past behavior and his own testimony. *See In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 WL 5205387, at *4 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.); *In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 WL 2616921, at *5 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). The jury heard evidence of the offenses, the expert opinions and testimony regarding appellant's risk for reoffending and appellant's testimony. The jury could weigh Mauro's testimony and disregard her opinion that appellant does not suffer from a behavioral abnormality. Sufficient evidence supports the verdict. Issues three and four are overruled. The judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on September 30, 2013
Opinion Delivered October 17, 2013

Before McKeithen, C.J., Gaultney and Horton, JJ.

10